## JACKSON and Others *v.* HOOVER and Others.

WILLS.—CONSTRUCTION OF.—The fundamental rule in the construction of wills is that the intention of the testator, if not inconsistent with some established rule of law, must control. Page 517.

SAME.—All the parts of a will are to be construed in relation to each other and so as, if possible, to form one consistent whole. Page 517.

SAME.—The courts will look to the circumstances under which the testator makes his will, as the state of his property and his family, &c.    Page 517.

SAME.—The inconvenience or absurdity of a devise is no ground for varying the construction, when the terms of it are unambiguous. But when the intention is obscured by conflicting expressions, it is to be sought in a rational and consistent, rather than in an irrational and inconsistent purpose.    Page 517.

SAME.—Words and limitations may be transposed, supplied or rejected, when the immediate context, or the general scheme of the will, warrant it, but not merely on a conjecture or hypothesis of the testator's intention.    Page 518.

SAME.—A by his will devised his lands to his wife, "for her own use and benefit in the maintenance of his children, during her natural life, or while she remained his widow." By another clause of the will it was provided that if the wife should die before the youngest child became of age, the premises should be divided equally among his three sons, naming them, who were required to see to the maintenance of the remainder of the children until they should become of age. In the next clause it was provided that the wife should have the use of such of the cleared land as she might wish for herself and the support of the children, and that the three boys might make what improvements they pleased on the uncultivated part of the land for their own use, but that neither of them should sell any part of the land until the youngest child became of age. The will then gave special legacies to each of the daughters absolutely, and certain legacies to the boys, contingent upon the fact of the estate being sufficient. There was also a residuary clause.

*Held,* that the widow took an estate for life in the cultivated part of the land, and the three sons a remainder in the whole in fee, charged, in case the widow died during the minority of any of the children, with their maintenance during minority.

APPEAL from the *Wayne* Circuit Court.

ELLIOTT J.—The appellants, claiming to be seized in fee simple by descent from *John Woodward,* deceased, of the undivided five-eighths of a certain tract of land, situate in *Wayne* county, brought this suit to recover the possession thereof. The defendants, claiming title to the whole of said land under the will of said *John Woodward,* filed a special answer, to which the plaintiffs demurred, but the court overruled the demurrer, and the plaintiffs refusing to reply to the answer, final judgment was rendered for the defendants. To which rulings the plaintiffs excepted, and appeal to this court.

Jackson and Others *v.* Hoover and Others.

The material allegations of the answer, in substance are: That said *John Woodward,* who was seized in fee of the land in controversy, after having made and published his last will and testament, in writing, died in *January,* 1821, leaving surviving him, *Rachel Woodward,* his widow, and the following named children, to-wit: *Lydia,* (who was then the wife of *John Sutherland,* and who, it is alleged, had received her portion of the estate of her father at the time of her marriage,) *Anna, Aaron, Patrick, Jane, John, Rachel* and *Eliza Woodward;* that said will was duly proved and admitted to probate on the 24th day of *February,* 1821, and letters testamentary duly granted thereon to the executors therein named; that afterwards, the said *Aaron, Patrick* and *John,* the sons of the testator, claiming the land under said will, subject only to the life estate of their mother, agreed upon and made a partition thereof, among themselves, which was afterwards ratified and confirmed by a decree of the *Wayne* Circuit Court, at the *March* term thereof, 1835; that in 1841, said *Aaron Woodward* sold and conveyed the part of said land so set apart to him to the defendant *John Hoover;* that the said *Patrick Woodward* died in 1834, leaving the defendant *Elizabeth,* now *Elizabeth Connover,* his widow, and one son, his only child, who afterwards died without issue, leaving said *Elizabeth,* his mother, his only heir; that in 1850, *John Woodward,* one of the sons of the testator, sold and conveyed the third part of the land so set apart to him on partition, to the defendant *William Connover.*

The plaintiffs are *Eliza Jackson, Rachel Welch* and *Jane Dicks,* surviving daughters of the testator, *Washington, Wiley, Wesley, Rachel* and *Jacob Sutherland,* and *Maria McCorkle,* the children and heirs of *Lydia Sutherland,* since deceased, and *John M.* and *Aaron Brown,* the children and heirs of *Anna Brown,* now deceased, who was the daughter of the testator.

*John Woodward's* will, a copy of which is made a part of the answer, is as follows:

Vol. XXVI.—33.

"I, *John Woodward*, of *Wayne* county and State of *Indiana*, being sound of intellect, and having a right knowledge of and for myself, do declare this to be my last will and testament, hereby revoking, annulling and making void any will, or instrument of writing to that effect, dated this 4th day of *January*, in the year of our LORD one thousand eight hundred and twenty-one.

"I do request, first, that all my just debts may be settled and adjusted out of my estate, real or personal.

"*Secondly*. I do bequeath unto my beloved wife, *Rachel Woodward*, in trust, one hundred and fifty-five acres of land, together with the appurtenances thereto belonging, being known as the south-west quarter of section 23, range 13, township 16, for her own use and benefit in the maintenance of my children by the said *Rachel*, during her natural life, or while she remains my widow.

"*Thirdly*. I do further bequeath, that if the said *Rachel Woodward* should die before the youngest child becomes of age, then and in that case the said premises to be equally divided amongst my three sons, to-wit: *Aaron Woodward*, *Patrick Woodward* and *John Woodward*, and they and each of them are severally bound to see to the maintenance of the remainder of the children until they shall respectively become of age.

"*Fourthly*. It is to be understood that the said *Rachel Woodward* has choice of what quantity of the now cleared land she wishes for her own use and benefit, towards the maintenance of the children, and that the boys, viz. *Aaron*, *Patrick* and *John*, make what improvements they please of the now uncultivated part of the premises, for their own use and benefit; nevertheless, neither of the said boys have liberty to sell or in any way dispose of any part or parcel of the said land until the youngest child becomes of age.

"*Fifthly*. I do further bequeath, that as each of the boys becomes of age, they each and severally shall be entitled to a horse of the value of $50, with a saddle and bridle,

provided there shall be sufficient after all demands are satisfied.

"*Sixthly.* I do bequeath unto my daughter, *Anna Woodward,* one bed and furniture, one saddle, one cow and two sheep, to be delivered to her on application. Unto *Lydia Sutherland,* one saddle, of the value of $15. I do further bequeath unto *Jane Woodward,* when she shall become of age, one bed and furniture, one saddle, one cow and two sheep. And I do further bequeath to *Rachel Woodward,* when she shall become of age, one bed and furniture, one saddle, one cow and two sheep. And I do further bequeath to *Eliza Woodward,* when she becomes of age, one bed and furniture, one saddle, one cow and two sheep. The above bequests to my daughters, for the fulfillment of which I request my wife, *Rachel Woodward,* and the executors hereinafter named, to see carried into effect, as they respectively become of age, or on the day of marriage.

"*Seventhly.* I do further request that if my said wife, *Rachel,* after my decease, should marry again, then, and in that case, she shares equally with my daughters in the household furniture. The cupboard furniture, &c., I leave to my wife, *Rachel,* for her use and benefit.

"*Eighthly.* I do further bequeath all the stock now on the place for the joint use of the family, except one horse, which I give unto my wife, *Rachel,* for her own use and benefit, and I further request that none of the said stock be sold unless to pay my just debts. And I further request that after the above legacies are paid, should there be any overplus, then, and in that case, to be equally divided between all the children.

"*Lastly.* I do request and name *Patrick Beard,* my trusty friend, and *Aaron Woodward,* my son, when he shall become of age, executors to this my last will and testament, jointly with my wife, *Rachel Woodward,* as executrix, and that they, each and severally, will faithfully and strictly see to the fulfillment of the above recited bequests. In testimony whereof," &c.

It was duly signed and sealed, and attested by two witnesses.

At the date of the will *Lydia* and *Anna*, two of the daughters, were over the age of twenty-one years. The ages of the other daughters were as follows: *Jane* thirteen, *Rachel* nine, and *Eliza*, who was the youngest child, five.

At the same date *Aaron*, one of the sons, was in his twentieth year, *Patrick* was eighteen, and *John* twelve years of age. *Rachel*, the widow, died in 1851, long after *Eliza*, the youngest child, became of age. The sons, and the defendants claiming under them, have been in possession of the land under claim of title since the death of the widow.

The sufficiency of the answer to bar the action depends on the construction to be given to the will, and this is the question discussed by counsel.

On the part of the plaintiffs, who are the appellants here, it is insisted that the only devise of any interest in the land to the three sons, after the death of their mother, is that contained in the third clause of the will, depending, as it is insisted, upon the contingency that *Rachel Woodward*, the widow, should die before the youngest child of the testator should become twenty-one years of age, but that as the widow did not die until long after the youngest child became of age, the contingency upon which the land was devised to the sons never occurred, and as no other disposition was made of the land after the death of the widow, it passed by descent to all the children of the testator as tenants in common.

On the other hand, it is claimed on behalf of the defendants, that, construing the third clause with the other clauses of the will, it is manifest that it was the intention of the testator to give the land in remainder, after the death of the widow, to his three sons, *Aaron*, *Patrick* and *John*, in fee; that in looking to the whole will, it is evident that the contingency of the death of the widow before the youngest child should become of age, stated in the third clause, was intended and must be construed to apply to the maintenance,

by the sons, of the other children of the testator, until they should respectively "become of age," and not to the devise of the fee of the land to the sons. Which seems to have been the construction given to the will by the Circuit Court.

No subject connected with jurisprudence presents to the courts more difficult or intricate questions than that of the construction of wills. The fundamental principle applicable to the subject is, that the intention of the testator, if not inconsistent with some established rule of law, must control. But questions of difficult solution often arise from the fact that the language used in devises fails to clearly express the real intention of the testator, and either by an actual or apparent conflict in different provisions on the same subject, or by the use of inappropriate or improper language, the intention is rendered so obscure that it is very difficult of a satisfactory determination.

By a series of adjudications, certain rules have been established to aid in the proper construction of wills. These, as stated by Mr. *Jarman,* with references to the authorities supporting them, may be found in a note to Redfield on the Law of Wills, p. 425, *et seq.*

We state such of them as are deemed to have a bearing on the question under consideration, viz:

"That all the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole."

"Courts will look at the circumstances under which the devisor makes his will, as the state of his property, of his family and the like."

"That the inconvenience or absurdity of a devise is no ground for varying the construction, where the terms of it are unambiguous; nor is the fact that the testator did not fore-see all the consequences of his disposition, a reason for varying it. But where the intention is obscured by conflicting expressions, it is to be sought rather in a rational and consistent, than in an irrational and inconsistent purpose."

"That words and limitations may be transposed, supplied or rejected, where warranted by the immediate context, or the general scheme of the will, but not merely on a conjectural hypothesis of the testator's intention, however reasonable, in opposition to the plain and obvious sense of the language of the instrument."

In the case at bar, the second clause of the will devises the lands in controversy to *Rachel Woodward,* the widow, during her life or widowhood, in trust for the benefit or maintenance of the children of the testator. The third clause provides that if the widow should die, before the youngest child became of age, then the land should be equally divided amongst the three sons, *Aaron, Patrick* and *John,* who, in that event, are charged with the maintenance of the other children during their minority. Looking to these clauses alone, and construing them without reference to the other provisions of the will, we should have no difficulty in determining the construction that should be given to them, as it would be evident from their language that they gave to the widow an estate for life, determinable, however, upon her subsequent marriage, with a contingent remainder to the three sons, to take effect upon the contingency that the widow should die during the minority of the youngest child.

But these clauses are both materially qualified by the fourth one, which, in effect, limits the life estate of the widow to that part of the land which was in cultivation at the death of the testator, and gives to the three sons the right to make any improvements they might desire on the then uncultivated part of the land for their own use and benefit, but prohibits them from selling any part of it during the minority of the youngest child.

Looking to the entire will, in all its provisions, it seems evident that the testator intended to dispose of his entire estate. Specific bequests are made to each of the children. Those to the daughters are absolute, and the executors are specially charged to see that they are fulfilled, while those

Jackson and Others *v.* Hoover and Others.

to the sons are made to depend upon the sufficiency of the estate for that purpose, after all other demands should be satisfied. And still the will contains a residuary clause. It is also apparent that the testator intended that the specific bequests to the children should be satisfied out of his personal estate. The provision of the eighth clause that all the stock then on the farm, except one horse given to the widow, should remain for the joint use of the family, and the prohibition of its sale, unless it should become necessary for the payment of the testator's debts, when taken in connection with the condition annexed to the specific bequests to the sons, shows that the testator supposed that his personal estate, independent of the stock on the farm, would be sufficient to pay his debts and discharge the specific legacies, but made the bequest to the sons dependent on that fact. Such a condition would scarcely have been deemed necessary, if the testator intended to subject the land to their payment.

In disposing of his estate, a prominent object of the testator seems to have been that his family, during the minority of his children, should remain together on the farm, and to charge the farm with their support during that period.

If it was intended by the third clause of the will, to give to the sons only a contingent remainder in the land, then that clause is evidently inconsistent with that part of the fourth one which authorizes them to "make what improvements they please of the now" (then) "uncultivated part of the premises, for their own use and benefit." That provision confers on the sons all the privileges of ownership over the unimproved part of the land. It enables them to improve it, and gives them all the profits derived therefrom. It is an unconditional right of possession, not dependent upon any contingency. It took effect at the death of the testator, and is not limited in duration, either to the life of the widow, the minority of the children, or to any other event, or period of time. Coupled with the right to improve

the uncultivated part of the land, is a proviso that neither of said boys have liberty to sell, or in any way dispose of any part or parcel of said land, until the youngest child becomes of age." This proviso, if attached to the third clause, would be consistent with a contingent remainder, charged with the support of the other children during their minority, but is unmeaning in connection with the fourth clause, if thereby no right of property in the land was conferred on the sons. During the time the family should remain on the farm, it would be but reasonable to suppose that the sons, by their labor, would contribute more to the common support than the daughters, and if it was not intended that they should have the land, no reason is perceived why the specific bequests to them should be made contingent, whilst those to the daughters should be absolute.

All these difficulties and inconsistencies are obviated by transposing a sentence in the third clause of the will, and attaching the words, "that if said *Rachel Woodward* should die before the youngest child becomes of age, then and in that case," to the second instead of the first member of the clause. It would then read thus: "I do further bequeath the said premises to be equally divided amongst my three sons, to-wit, *Aaron Woodward, Patrick Woodward* and *John Woodward*, and if the said *Rachel Woodward* should die before the youngest child becomes of age, then and in that case, they and each of them are severally bound to see to the maintenance of the remainder of the children, until they shall respectively become of age." This transposition renders the third clause, entirely consistent with the other clauses of the will and brings all its provisions into harmony. It gives full effect to them all, and renders the will a consistent and harmonious whole, and presents a consistent reason for each of its various provisions. Read in this light, it provides, in substance, that the widow should have a life estate in the cultivated part of the land, for the maintenance of herself and the children, with remainder in the

whole-to the three sons, in fee; authorizes the sons, at any time, to improve the uncultivated part, and hold it for their own use, but prohibits them from selling it until all the children should attain their majority. And in case the widow should die during the minority of any of the children, the sons are charged with their maintenance during that period. The specific legacies to the daughters are made absolute for the reason that they do not share in the land, whilst those to the sons are contingent, depending on the sufficiency of the personal estate for their payment, because they get the land. This, it seems to us, is the proper construction of the will, and best accords with the apparent intention of the testator.

Mr. *Redfield* states the rule on the subject of transposition thus: "There is no more clearly established rule of construction, as applicable to wills, than that words, or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator. But it must appear, either from the words of the will, or extrinsic proof, admissible in aid of the construction of the words, that the transposition does really bring out the true intent of the testator, and thus render what was before obscure, clear. For if the transposition leaves the same uncertainty, only giving a different import, it is not allowable. But where it gives effect to all the provisions of the will, and renders them all harmonious and consistent, both with each other and with the general purpose and intent of the will, it affords very satisfactory ground of presumption that it reaches the source of the difficulty, and explains the mode in which it arose." Redf. on Wills, § 15, p. 431. See, also, *Marshall* v. *Hopkins*, 15 East 309; *Covenhoven* v. *Shuler*, 2 Paige 122; *Rathbone* v. *Dyckman*, 3 Paige 9; *Pond* v. *Burgh*, 10 Paige 140; *Chrystie* v. *Phyfe*, 19 N. Y. 344; *Doe* v. *Allcock*, 1 B. & Ald. 137.

The court overruled a motion to strike out certain portions of the answer as being "irrelevant and impertinent." A part of the matter objected to was irrelevant and should have been stricken out, but as sufficient facts were well

**522**     SUPREME COURT OF INDIANA.

The State ex rel. McCarty, Aud., &c. v. The Board of Com. Montgomery Co

pleaded to bar the action, the substantial rights of the appellants were not prejudiced by the ruling of the-court, and we cannot, therefore, reverse the judgment for that error.

The judgment is affirmed, with costs.

*M. Willson, J. B. Julian* and *J. F. Julian,* for appellants. *J. P. Siddall,* for appellees.

