No. 13,577.

### ELLIOTT *v.* ELLIOTT ET AL.

WILL.—*Implied Trust.*—*Illegitimate Children.*—Where property is devised to a wife " to use and dispose of as she may think best for herself and my children," she takes it charged with an implied trust for the use of herself and the testator's children; and the word " children " will be held to mean the testator's illegitimate children by the devisee, to the exclusion of his legitimate children by a former wife, when the circumstances show such to have been his intention.

From the Tippecanoe Circuit Court.

*B. W. Langdon* and *T. F. Gaylord,* for appellant.

*W. D. Wallace,* for appellees.

COFFEY, J.—In 1845 George Elliott was married in England, and had as the issue of said marriage one son, William. His wife died in 1847, and in 1848 he married Jane Haywood, and had by her one son, Robert G. Elliott, who is the plaintiff in this suit. In 1851 he abandoned his wife and children, and came to the United States and located at Lafayette, where, in 1852, he married Mary Ann Dungan, never having been divorced from his wife in Great Britain. By her he had four children, who, together with Mary A. Elliott, are the defendants in this suit. In 1865 George Elliott died in this State, leaving a will, which, omitting the formal parts, is as follows :

" I give and devise to my beloved wife, Mary Ann Elliott, my real estate in the county of Tippecanoe and State of Indiana, described as follows " (we omit the description), " together with all the appurtenances thereto belonging, in fee simple, that she may dispose of the same as she may think best for herself and my children.

" Item 2d. I devise and bequeath to my said wife all my money which I now have on hand, and all that may be on hand at the time of my decease, together with my household

goods, for her to have and use as she may think best and proper for herself and my children; provided, that in case my beloved wife, Mary Ann Elliott, should marry after my decease, then, and in that case, it is my will that two-thirds of all my property, both real and personal, shall descend in equal proportion to my children.

"Item 3d. I hereby nominate and appoint my said wife, Mary Ann Elliott, executor of this, my last will and testament, hereby authorizing and empowering her to compromise and discharge, as she may think proper, all my debts and all the claims due to me, and I hereby revoke all former wills."

Both the wife in England and the son William are dead, having departed this life since the death of George Elliott. This suit is brought by Robert G. Elliott, the legitimate son by the second marriage, for the purpose of obtaining a construction of the will above set out, and to compel an accounting. The circuit court sustained a demurrer to the complaint, and the plaintiff excepted, and now prosecutes this appeal.

It is contended by the appellant that the will constitutes Mary Ann Elliott a trustee of the property thereby bequeathed to her, for the use of the children of the testator, and that the word "children," as used in the will, is to be construed as meaning legitimate children, and that as the children by Mary Ann Elliott are illegitimate, they have no interest in said property.

It is contended by the appellees that, by the terms of the will above set out, Mary Ann Elliott took the property bequeathed to her absolutely, and that no trust was created in favor of the children of George Elliott.

They further contend that if the will is to be construed as creating a trust in favor of the children of George Elliott, then it should be construed as creating a trust in favor of his children by Mary Ann Elliott only.

There is no allegation in the complaint to the effect that at the time George Elliott married Mary Ann Dungan, she then, or at any other time during his life, had any knowl-

edge that he had a wife living. Neither is it alleged that she has again married since the death of George Elliott.

The first question for decision is, did the will create a trust in favor of the children of George Elliott?

It will be observed that by item 1st the real estate therein described is bequeathed to her *in fee simple,* that she might dispose of the same as she thought best for herself and the children of the testator.

The current of decisions of late years sets against the doctrine of converting the devisee or legatee into a trustee; and the courts now refuse to extend the doctrine, and will not imply a trust unless it appears from the will that such was the intention of the testator. Lewin Trusts, p. 137.

Consequently, where a devise is made to one standing in the relation of parent, with directions touching the *maintenance* of children, ordinarily no trust will arise, as such directions generally relate to the *motive* only of the testator or donor. So, when a bequest was made to one " to enable him to maintain the child," or to enable him " to maintain himself and family," or " towards the support and maintenance of her two children until they shall attain the age of twenty-one years," or " to A. for her own use and benefit, absolutely, having confidence in her sufficient and judicious provision for her children," or " being well assured that she will husband the means left to her for the sake of herself and children," or " to be applied by her in the bringing up and maintenance of her children." It is held in all such cases that the legatee takes an absolute estate and that no trust arises. *VanGorder* v. *Smith,* 99 Ind. 404; *Parsons* v. *Best,* 1 Thomp. & C. (N. Y.) 211; *Foose* v. *Whitmore,* 82 N. Y. 405; *Hunt* v. *Hunt,* 11 Nev. 442; *Williams* v. *Worthington,* 49 Md. 572.

But there is another class of cases, where trusts are sometimes implied from the words used, though an express trust is not declared, as where property is given to a parent or other person standing in the relation of parent, and some

direction or expressions are used in regard to the mainte-
nance of his family or children. The question to be decided
in this class of cases is, as in others, did the testator intend
to create a trust and create an obligation, or did he merely
state incidentally the motive which led to the gift? 1 Perry
Trusts, section 117, says: " In the following cases a trust
was clearly implied by the court: Where property was
given, that ' he may dispose thereof for the benefit of him-
self and children,' or, ' for his own use and benefit, and the
maintenance and education of his children,' ' for the main-
tenance of himself and family,' ' at the disposal of the leg-
atee for herself and her children,' or ' all overplus towards
her support and her family,' or ' to A. for the education and
advancing in life of her children.' "

To the same effect is Lewin Trusts, p. 137. Lewin Trusts,
p. 138, speaking of this class of trusts, says: " Where
a trust is created, the person bound by it is the hand to ad-
minister it, and can sign a valid receipt for the fund, the
subject of the trust. And the person bound by the trust is
regarded in the same light as a committee of a lunatic or
guardian of an infant, that is, he has a duty imposed upon
him; but so long as he discharges that duty, he is entitled
to the surplus for his own benefit, and the court requires
from him no account retrospectively of the application of
the fund, and allows him prospectively to propose any rea-
sonable arrangement how the object of the trust may be ac-
complished, or will order payment to him on his undertak-
ing to maintain the children properly, with liberty to the
children to apply. Should the person bound by the trust
become by misconduct unfit to maintain and educate the
children, the court will not allow him to receive the fund;
and should the fiduciary assign his interest, the court will in-
quire what part is needed for the maintenance and education
of the children, and will give the surplus only to the as-
signee."

From these authorities we are of the opinion that the will

of George Elliott, above set out, bequeaths to his widow, Mary Ann Elliott, the property of the deceased, charged with an implied trust for the use of herself and his children. Having reached this conclusion, it remains to be ascertained who is intended by the words " my children."

Here are two classes of persons to whom the words will apply, viz., two legitimate children in England, and four illegitimate children in this country. It may be conceded that when a man speaks of his children, he is ordinarily understood to mean his legitimate children. But where it is plain from the surrounding circumstances that he used the words in a different sense, they can not be given that meaning.

The fundamental rule in the construction of wills is, that the intention of the testator, if not inconsistent with some established rule of law, must control, and to ascertain that intention the courts will look to the circumstances under which he makes his will, as to the state of his property and his family. *Jackson v. Hoover,* 26 Ind. 511.

Fourteen years prior to his death George Elliott abandoned his wife and children in England and came to America, where he married another woman, by whom he had four children. In his will he bequeaths all his property, both real and personal, to the woman whom he married in America, in trust for the support of herself and his children, to be sold, and the proceeds expended as she might, in her judgment, deem best.

So far as appears from the record in this case she had no knowledge of the existence of the plaintiff in this case; indeed, the legal presumption is that she had no knowledge that George Elliott ever had another wife, for had she possessed such knowledge she would be chargeable with the crime of living in open and notorious adultery. No such charge is made. The plaintiff, at the time of the death of his father, was about fifteen years of age, while the defendants herein were small children. In the light of these surrounding circumstances can it reasonably be said that George

Elliott, by his will, intended to provide for the plaintiff, and leave his children here unprovided for and unprotected ?

. The case of *Gelston* v. *Shields*, 78 N. Y. 275, is, in its facts, similar to this case. In that case Henry Shields, the testator, by his will, bequeathed certain of his property to his wife, Catharine, and bequeathed the remainder to his children, without naming them. After his death one Jane Shields, or Jane Valentine, appeared, and, claiming to be his widow, instituted suit for a dower interest in his estate, and succeeded. She had two children, who claimed to be the legitimate children of Henry Shields, deceased; but the court, construing the will in the light of the surrounding circumstances, held that the testator, in bequeathing his property to his children, must have intended to bequeath it to his children by Catharine Shields, who was designated in the will as his wife. Great stress was placed upon the fact that the will named Catharine Shields as the guardian of the minor children of the testator.

So, in this case, we think one strong circumstance in the case tending to show the intention of the testator, is the fact that George Elliott constituted Mary Ann Elliott the trustee of his property, to be expended by her for the support of his children.

In our opinion the words " my children," in the will in question, mean the children of George Elliott by his wife Mary Ann Elliott. Such being our conclusion, it follows that the appellant has no interest in the property in controversy, and that the circuit court did not err in sustaining the demurrer to the complaint.

Judgment affirmed.

Filed Feb. 19, 1889.