OF THE

## STATE OF IOWA

AT

DES MOINES, JANUARY AND MAY TERMS, 1912.

AND IN THE SIXTY-SIXTH YEAR OF THE STATE.

MARY WARDEN, ET AL., Appellees, v. MAY HUNT OVERMAN, ET AL., Appellants.

**Wills:** CONSTRUCTION: LAWFUL HEIRS: ADOPTED CHILD. In determining the interest passing under a will the entire instrument must be construed in the light of the circumstances under which it was executed; and the intent of the testator will be given effect without regard to the strict literal meaning of isolated words and phrases. In this case the testatrix adopted defendant and the articles of adoption were recorded, but there was no public recognition of the relationship and testatrix assumed no control over defendant, but she continued to reside with her parents and other relatives until her marriage. The will in question gave to defendant designated as "my young friend" a specific bequest, and specific bequests to others. It then provided that the residue of the estate should go to the "lawful heirs" of the testatrix, excepting certain nephews. *Held,* that the interest of the adopted

child was limited to the specific bequest, and that the term "lawful heirs" had reference to heirs of the blood and not defendant, the adopted daughter.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT, Judge.

TUESDAY, APRIL 9, 1912.

ACTION in equity for the construction of the will of Mary Burwell, deceased. Decree as prayed by plaintiffs, and defendants appeal.—*Affirmed.*

*Whitaker & Snell,* for appellants.

*Higbee & Mills* and *Stevens & Fry,* for appellees.

WEAVER, J.—The will in question will be more readily understood if the statements of its provisions are preceded by a recitation of facts which are undisputed or clearly established by the evidence. On November 24, 1890, the testatrix was the wife of James Casteel with whom her relations were inharmonious, and from whom she was later divorced. She was the owner of valuable property and childless. At that time living temporarily with her were one Samuel E. Hunt and wife, persons in moderate circumstances to whom she had extended some assistance. Of this family there was a young daughter known as Hattie May Hunt or May Hunt, seven years of age. On the day named, the testatrix and Samuel E. Hunt and wife appeared before a notary public in the city of Boone, Iowa, and executed an article of adoption in the following form:
Know all men by these presents:

That Samuel E. Hunt and Addie A. Hunt, husband and wife of Boone county, Iowa, as parties of the first part and Mary Casteel of Boone, Iowa, as party of the second

part do make and enter into the following contract and agreement, to wit:

That said second party does hereby and by these presents adopt as her own, the child Hattie May Hunt, now aged seven years in the same manner and for the same purpose as if said child was born to her in lawful wedlock and assumes to said child all the rights, duties and responsibilities which said second party would sustain if said child was natural born unto her including the right of inheritance.

That said first parties who are now living together as husband and wife, hereby agree and consent that said child may be adopted by second party as herein indicated and for the purposes herein expressed.

It is further expressly agreed by and between the parties hereto that said child shall be hereafter known and designated by the name of Hattie May Hunt and that said child, Hattie May Hunt is the child of said first parties born unto them in lawful wedlock.

Dated November 22, A. D. 1890.

(Duly acknowledged.)

> Samuel E. Hunt.
> Addie A. Hunt.
> Mary Casteel.

The mother of Hattie May Hunt had in former years lived to some extent with the testatrix, who at one time had been her guardian. After the execution of the foregoing instrument, Hunt and his family remained a few months with Mrs. Casteel, when they moved away taking Hattie May with them, and thereafter maintained a separate home in various places, but most of the time in Boone county, and some of the times not far from the home of the testatrix. At no time after the family left the home of the testatrix in the year 1891 did Hattie May return there except for brief calls and visits. She did not know of the deed of adoption until some one mentioned it to her when she was about fourteen years old. Aside from the recording of the deed, there seems never to have been any public recognition of the relationship evidenced by said intsrument. The testatrix assumed no authority over the girl who continued

to reside with her father and mother until she was eighteen years of age, when she went to the state of Missouri where she lived with family relatives until married three years later and removed to Nebraska. When she was about to leave for Missouri, the testatrix called upon her, bade her goodbye, and gave her a book. Indeed, so far as the record shows, the relations between the two remained without any claim being asserted by either of rights or obligations based upon said deed of adoption, and their conduct toward each other was as if such instrument had never been made. The girl was accustomed to address and speak of the testatrix as "Aunt Mary," which seems to be the familar appellation given her by many of the witnesses, but no one speaks of ever hearing them address each other as parent and child. Indeed, save the deed or article itself, there was nothing to suggest to the world or to their immediate acquaintances any closer relationship than that of mutual friendship and good will.

Letters occasionally passed between them after the girl left Boone. Only a part of this correspondence has been preserved, but the letters from the testatrix which do appear are addressed to the appellant as "Dear Niece," express a kind personal interest in the girl and her parents, and on one or more occasions expressed a willingness to give her assistance if needed. It is not claimed, however, that the subject of adoption or of any relationship of foster parent and child was ever mentioned or discussed between them.

On May 26, 1905, the testatrix made and executed a will, by the terms of which her estate was to be ·disposed of substantially as follows: The first devise is to her husband of the one-third of the estate, real and personal. The next paragraph of the intsrument reads as follows: To my young friend, Mary Hunt, daughter of Samuel and Addie Hunt, I give the sum of one hundred dollars, and direct that the same be paid to her within one year from the date of my death. It is not disputed that the person here referred

to as Mary Hunt is identical with the child named in the deed of adoption who is defendant and appellant in this action under the name of May Hunt Overman.

In the succeeding paragraphs of the will the testatrix provides legacies for several named persons among her collateral relatives, explains why she makes no provision for others, provides for the purchase and improvement of a cemetery lot, and endows a room in a local hospital. Following these provisions is the residuary clause of said will reading as follows: "All the rest, residue and remainder of my property, both real and personal, I give, devise and bequeath to my lawful heirs (excepting therefrom my said nephew, Amos E. Burwell and Frank Burwell) to be divided between them in shares and proportions as provided by law, and under the inheritance laws now in force in the state of Iowa."

On March 5, 1907, testatrix executed a codicil to said will, making special provisions affecting devises which had been made to two of her nephews, and authorizing her executor to withhold certain city lots owned by her from sale so long as in his judgment it was for the interest of her estate to so do. Subject to these modifications, she ratified and republished the will as originally drawn. No reference was made in the codicil to Mary or Hattie May Hunt; the death of the testatrix occured June 29, 1909, and the will with codicil attached was admitted to probate on August 23d of the same year. The value of the estate left by the deceased is variously estimated at from $60,000 to $100,000. On April 20, 1910, this action was begun by the collateral heirs of the testatrix naming the said May Hunt Overman and husband as defendants alleging that disputes had arisen concerning the identity of the persons entitled to claim the residue of said estate. They deny that under the terms of the will said May Hunt Overman acquired any right to any part of said estate except the legacy of $100 therein expressly provided for her and allege that

under the residuary clause of the will the entire estate, after satisfying the claims of the surviving husband and paying the legacies mentioned in said instrument, passes to the said collateral heirs of the testatrix. The plaintiffs therefore ask that the will be construed in accordance with this contention. To this proceeding the said May Hunt Overman appeared and filed answer alleging that she is the adopted daughter and only heir of the testatrix, and as such is entitled to demand and receive the entire residuary estate. The substance and effect of the testimony offered on the trial is found in the statement already made. We have omitted, however, to mention one fact having some bearing upon the merits of the controversy. In November, 1907, and after the execution of her said will, the testatrix sent or caused to be sent to Mrs. Overman at her home in Nebraska a draft for $100, taking therefor a written receipt as follows: "Crookston, Nebraska, November, 1907. $100.00 This certifies that I have this day received from Mrs. Burwell of the city of Boone, county of Boone and state of Iowa, one hundred dollars, and this amount is to be deducted out of any provision made for me in the last will and testament of said Mary Burwell. [Signed] May Hunt Overman."

Considerable testimony was introduced of conversations between testatrix and others concerning her property and her relatives and heirs and their several claims or lack of claim upon her bounty, but we think it unnecessary to embody it in this opinion. If truthful and competent, some of it tends to show that at and about the time she made the will she was accustomed to speak of her nephews and nieces as her "heirs."

Upon consideration of the issues and the evidence presented, the trial court found for the plaintiffs construing the will as contended for in the petition, and declaring the collateral heirs of the testatrix entitled to receive the entire

residuary estate.  From this finding and decree the defendants, May Hunt Overman and husband have appealed.

Counsel on either side have discussed the sufficiency in form and substance of the article of adoption on which the appellant relies.  In our view of the case presented by the appeal, we may assume, without deciding it, that the instrument has no fatal defect, and that the execution and recording thereof effectuated a legal adoption of the appellant by the testatrix.  But such adoption did not in any manner take away or restrict the right of this woman to dispose of her estate by will.  Had she been the natural mother of the appellant, it was within her legal right and power to wholly disinherit her or to restrict the provison for such child to a nominal legacy.

Starting with this proposition, the correctness of which all will concede, we must read the will in all its parts and in the light of the admitted circumstances under which the instrument was made and determine what right, interest, or estate is thereby conferred upon the appellant.  Assuming the validity of the adoption, it follows, as of course, that appellant acquired the legal status of a child and prospective heir of the testatrix, and if this fact were uncomplicated with other inconsistent provisions, or other inconsistent relevant facts and circumstances, a general reference in the will of the foster mother to her heir or heirs would doubtless be treated as having application to appellant. But the case as shown by the record before us is incapable of such easy solution.  The question with which we are confronted is whether when testatrix says "all the rest, residue and remainder of my property I give, devise and bequeath to my lawful heirs (excepting therefrom my nephew, Amos E. Burwell and Frank Burwell)" to be divided between them in shares and proportions as provided by law, she intended thereby to give the residue of her estate to her adopted daughter, or to those persons who would at her death stand in the relation of her heirs by blood.  That she

made use of the more or less technical word "heirs;" which, strictly construed, might exclude her collateral relatives, is by no means decisive of this question.

The thing to be sought for in the interpretation of the will is not the mere book definition of the words there employed, but what is the meaning with which the testatrix used them? Whom did she have in mind in speaking of her "lawful heirs"? In answering this question the technical or strictly legal meaning of the words is not to be overlooked, but it is not controlling if it clearly appears that the testatrix made use of them in a sense which is less exact or less scientific, and, in determining the question, the court must consider the will in all its parts, and in the light of all the relevant facts and circumstances under which the instrument was executed.

In other words, if by the words "lawful heirs" she had reference to her heirs of the blood and not to her adopted daughter, that intention must be respected and enforced. The rule which gives effect to the clearly ascertained intent of a valid will, regardless of the strict literal meaning of isolated words and phrases employed therein, is one of such general recognition that an attempt to collate the authorities thereon would be a waste of time. But see, for example, *Elliott v. Elliott,* 117 Ind. 380 (20 N. E. 264, 10 Am. St. Rep. 54); *Gelston v. Shields,* 78 N. Y. 275; *Jackson v. Hoover,* 26 Ind. 511; *Noe v. Kern,* 93 Mo. 367 (6 S. W. 239, 3 Am. St. Rep. 544); *Thackston v. Watson,* 84 Ky. 206 (1 S. W. 398); *Peet v. Railroad Co.,* 70 Tex. 522 (8 S. W. 203); *Bradlee v. Andrews,* 137 Mass. 50; *Furenes v. Severtson,* 102 Iowa, 322; *Townsend v. Townsend,* 25 Ohio St. 477.

Turning to the will in controversy, it is manifest that, whatever may have been the true legal relation existing between Mrs. Burwell and the appellant, she carefully avoided making use of any expression in her will indicating recognition of appellant as an adopted child. On the contrary, she inferentially denies it when she describes her as "my young

friend, Mary Hunt." True, this denial does not prove or disprove the fact, but it is very persuasive evidence of the woman's intent in making the will and gives material aid in construing the language employed by her in the residuary clause. Had she intended to provide for appellant as an adopted daughter, it is inconceivable that she would not have spoken of her as such.

Again, when she had provided for all the special gifts she desired to make and come to the residuary clause, had she intended that this girl should take the entire remainder of the estate, the easy and natural thing for her to do was to make the devise to appellant by name just as she had made the bequest in her favor earlier in the will. On the contrary, she provides that the residue shall go to her "lawful heirs," using the word in its plural form, and directs the division of the property into "shares and proportions," all of which is clearly inconsistent with any thought in her mind of a gift for the sole use of appellant. That she used said phrase "lawful heirs" as descriptive of her heirs by blood is shown, not only by the choice of these words and the omission to mention the appellant, but still more significantly by her exclusion from the benefits of said clause of two of her nephews. If she contemplated or believed that the gift provided for in this clause was for the benefit of appellant to the exclusion of her heirs of the blood, no such exception was called for, and the parenthetical phrase in which it is expressed would be without apparent meaning or effect. It is only upon the theory that she was making this devise to her heirs of the blood as a class, and knew that if she did not except therefrom these two nephews they would share in its benefits, that any reasonable explanation of the exception can be made.

As sustaining the opposite view and requiring the words "lawful heirs" to be given strict interpretation limiting the residuary devise to the heir by adoption counsel cite us to *Defreese v. Lake,* 109 Mich. 415 (67 N. W. 505, 32 L. R.

A. 744, 63 Am. St. Rep. 584). The only question there decided having any relevancy to the issue before us is that, where a will is unambiguous on its face, the testimony of the scrivener who prepared it is not admissible to prove an intent to dispose of the property in a manner different from that expressed in the will as written. This is familiar and sound doctrine. In the case before us, looking only to the writing itself and the admitted circumstances of the case, we think the words "lawful heirs" clearly convey the meaning of heirs of the blood, and not heirs by adoption, and in so finding we in no manner ignore or deny the force and effect of the rule applied in the cited case. Quite in joint is an earlier decision by the Michigan court (*Morrison v. Sessions,* 70 Mich. 297 (38 N. W. 249, 14 Am. St. Rep. 500). In some of its phases it is strikingly similar to the case at bar. In that case Sessions and wife, being childless, entered into articles for the adoption of May Hendricks, a child of seven years. The child lived in the family of her adopted parents only about two months when the foster mother died, and she returned to her own relatives, never again resuming a place in the family of Mr. Sessions. Later Sessions attempted to revoke the articles of adoption and died some years thereafter leaving a will in which after making certain specific gifts he devised the residue of his estate to his "lawful heirs." As in this case the adopted child, asserting herself to be the only heir of the testator, claimed the benefit of said devise. The court, while conceding that the attempted revocation of the adoption was probably of no legal validity, yet held that under the circumstances it was manifest the testator intended the devise should go to his heirs of the blood, and that the adopted daughter took nothing under the will. In arriving at this conclusion the court says: "The cardinal principle in the interpretation of wills is to arrive at and carry out the intention of the testator if it is lawful. Having the evidence before us, which convinces

us that, at the time he made the will and after, he did not regard May Morrison, the appellee, as his heir, it is clear that he did not intend to include her in the distribution of his estate, under the fourth clause of his will. The testator used the term 'lawful heirs' in its ordinary and well-understood sense, as referring to a class upon whom descent of property was cast by the statute of descent. Had he intended the bequest for her, he would not have said 'lawful heirs' but 'lawful heir.' He had not her in his mind, but his numerous kindred who by the statute would inherit his property." The application of the rule thus affirmed to the instant case is too clear to require discussion.

In *Reinders v. Koppelman*, 94 Mo. 338 (7 S. W. 288), it was held that the term "lawful heirs" in a devise does not include heirs by adoption. We should hesitate to approve or follow that proposition to its full extent, as a general rule at least, but when, as in the *Morrison* case and the case at bar the instrument as a whole indicates that the maker of the will used the words with exclusive reference to heirs of the blood, they should be given effect accordingly.

Bearing in the same direction is *Elliott v. Elliott*, 117 Ind. 380 (20 N. E. 264, 10 Am. St. Rep. 54), where a testator devised certain property to a woman whom he called "wife," but to whom he was not lawfully married for the use of "herself and my children," the court construed the words "my children" to apply to his illegitimate children by the woman named, and that his legitimate children by his lawful wife from whom he had separated took nothing. In *Bailey v. Bailey*, 25 Mich. 185, the court says: "The word 'heirs' is not, taken by itself, conclusive as to the persons intended to take." See, also, *Jones v. Lloyd*, 33 Ohio St. 572. It is unnecessary to further discuss the facts or the law of the case.

Upon familiar principles to which we have adverted, the will must be construed to give effect to the intent of the testatrix, and we think there is no room for reasonable

doubt that the testatrix intended to limit her bounty to the appellant to the legacy expressly given her, and that the conclusion announced by the trial court must be *affirmed*.