Gerald C. MATHEW, Appellant,

v.

Paul J. MATHEW, Trustee under the Last
Will and Testament of J. M.
Mathew, et al., Appellees.

No. 55514.

Supreme Court of Iowa.

July 3, 1973.

Richard C. Bauerle of Johnson, Bauerle & Hester, Ottumwa, for appellant.

Hugh B. McCoy of McCoy & Faulkner, Oskaloosa, for appellees.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

This is an appeal from the trial court's decree entered in a declaratory judgment action brought to construe paragraph 3 of item 2 of the will of James M. Mathew who died November 10, 1951, a resident of Mahaska County.

Decedent's will dated June 29, 1938 was admitted to probate November 17, 1951. He was survived by his widow, Ethel, who died November 26, 1970. J. M. Mathew had six children. Two sons, I. E. Mathew and Walter Ray Mathew, predeceased their father. The remaining four children of J. M. Mathew predeceased his widow.

Plaintiff, Gerald C. Mathew, is the natural son of Marianne Mathew who was the wife of Walter Mathew. May 17, 1951, Walter's petition for adoption of Gerald who was then 20 years of age and married was granted by the Wapello district court under the provisions of chapter 600, The Code. Walter Mathew left no natural born children or other adopted children. Each of the other five children of J. M. Mathew left surviving children who are all named as defendants.

The last will and testament of J. M. Mathew provided generally that if his wife, Ethel, survived then all of his property was devised to Paul J. Mathew as trustee for the support and enjoyment of Ethel during her lifetime. The testator then provided:

" * * * Upon the death of my said wife I authorize and direct my said trustee to sell any real estate which may then be owned by my estate and to sell any personal property then owned by my estate, other than my stock in the Ideal Lumber Company, and to make distribution of all money in the hands of my trustee and the shares of capital stock of the Ideal Lumber Company then owned by my estate, to by children and grandchildren as follows: One-sixth (⅙) thereof to my son Harry E. Mathew; One-sixth (⅙) thereto my son Walter Ray Mathew, if he shall then be living, or to any child or children (in equal shares) of his body if he shall then be deceased; One-sixth (⅙) thereof to my daughter Cora B. Waddell; One-sixth (⅙) thereof to my daughter Alta Langlois; One-sixth (⅙) thereof to my daughter Mae Greenlee; One-eighteenth (1/18) thereof to my grandson Paul J. Mathew (my said trustee); One-eighteenth (1/18) thereof to my grandson Bruce E. Mathew; and One-eighteenth (1/18) thereof to my granddaughter Frances M. Soderstrom. If my said son Walter Ray Mathew shall not be living or have any child of his body surviving him at the time of the death of my said wife, then the one-sixth share of the money and Ideal Lumber Company stock in the hands of my trustee which would be distributed to him if living, or to any child or children of his body surviving him, shall be distributed by my said trustee to *my remaining heirs-at-law in accordance with the laws of inherit-*

*ance now in force in the State of Iowa."* (Emphasis supplied)

Since the death of Ethel M. Mathew the trustee, Paul J. Mathew, has made a partial distribution of the assets of decedent's estate. Plaintiff was excluded from the distribution.

Division 1 of plaintiff's petition is based on the theory he is entitled to a one-sixth share of the property in the hands of the trustee at the date of Ethel M. Mathew's death, as he is a child of the body of Walter Ray Mathew to whom the property was devised. In division 2 he contends that in the event it is determined he is not a child of the body of Walter Ray Mathew he is a remaining heir-at-law of the testator and is entitled to one-sixth of the one-sixth share his father would have been entitled to if he were living at the date of Ethel's death.

Defendants in answer alleged plaintiff was not entitled to a share in the assets of decedent's estate because he is neither a child of the body of Walter Ray Mathew nor one of the remaining heirs-at-law as set forth in testator's will.

The matter was submitted on stipulated facts.

The court concluded plaintiff was not a child of the body of Walter Ray Mathew since the one-sixth interest devised by the testator to Walter was contingent on his surviving testator's widow and as having a child of his body this devise did not vest; therefore, plaintiff was not entitled to a one-sixth share of the proceeds and stock in the hands of the trustee at the date of Ethel's death as claimed in division 1 of his petition.

The court further concluded plaintiff was not entitled to a one-sixth of the one-sixth share as a remaining heir-at-law under the testator's will as asserted in division 2.

The court dismissed plaintiff's petition and awarded judgment for costs against him.

Plaintiff does not appeal from the adverse ruling on his claim asserted in division 1 of his petition.

I. Plaintiff's appeal involves only a controversy over title to the one-sixth share of J. M. Mathew's property which, upon the death of testator's wife, was to pass to Walter Ray Mathew or, in the event of his death or absence of any "child of his body," to testator's "remaining heirs-at-law in accordance with the laws of inheritance now in force in the State of Iowa."

Plaintiff believes that he, as the lawfully adopted son of Walter Ray Mathew and consequently "heir-at-law" of J. M. Mathew, is entitled to one-sixth of the one-sixth share of testator's property held by the trustee at the time of Ethel Mathew's death.

As his sole assignment of error plaintiff contends the trial court erred in finding testator's actual words and intention were controlling and "he by using the words 'remaining heirs at law' limited the devise of the one-sixth share which did not vest in Walter Ray Mathew so that it was to go to his bloodline and lineal descendants to the exclusion of the adopted son." Plaintiff argues the court should not have sought to construe "my remaining heirs-at-law in accordance with the laws of inheritance" in light of other provisions of the will, but rather should have distributed the one-sixth interest in the estate in strict compliance with the laws of intestate succession that were effective on the date of Mathew's death.

In other words, the laws of inheritance would be determinative irrespective of any contrary intent manifest in the testamentary document. Hence, plaintiff asserts the only question presented is whether an adopted child inherits through, as well as from, his adoptive parents. Because one could inherit through his adoptive parents, plaintiff concludes he is entitled under item 2 to a one thirty-sixth share of the estate.

Defendants of course, seek affirmance of the trial court's reasoning and conclusion the fractional share of Walter Ray Mathew should be divided only among testator's lineal descendants.

Plaintiff's conclusion that under paragraph 3 of item 2 of testator's will he is entitled to a one thirty-sixth share of decedent's estate is based primarily on section 600.6, The Code, 1950, which then provided:

"Upon the entering of such decree, the rights, duties, and relationships between the child and the parent by adoption shall be the same that exist between parents and child by lawful birth and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock."

■ Under Iowa law it is well settled that where intestate succession is concerned an adopted child does inherit through his adoptive parents. McCune v. Oldham, 213 Iowa 1221, 1225, 240 N.W. 678, 679; Cook v. Estate of Todd, 249 Iowa 1274, 1278, 90 N.W.2d 23, 25.

The quoted statute has appeared without change in the subsequent codes. See section 600.6, The Code, 1973.

. Having established that as an adopted child he is entitled to inherit through Walter who was an heir-at-law of J. M. Mathew and that his adoptive father had predeceased J. M. Mathew, plaintiff next contends the problem is not a question of what the testator meant by the words, "my remaining heirs-at-law in accordance with the laws of inheritance now in force in the State of Iowa," but rather a question of what the laws of inheritance were as of the date of his death.

The rules of intestate succession in force at the time of testator's death were set forth in section 636.31, The Code, 1950, in this language:

"Descent to children. Subject to the rights and charges hereinbefore provided, the remaining estate of which the decedent died seized shall, in the absence of a will, descend in equal shares to his children, unless one or more of them is dead, in which case the heirs of such shall inherit his or her share in accordance with the rules herein prescribed, in the same manner as though such child had outlived its parents."

Plaintiff thus arrives at his initial premise—the testator's intention as ascertained from the entire will is immaterial.

■ Ordinarily, a reference to the statutes of distribution in connection with a bequest to "heirs-at-law" of the testator is taken as pointing out not only those who are to take but also the proportions in which they are to take. Wright v. Copeland, 241 Iowa 447, 453–454, 41 N.W.2d 102, 106; 57 Am.Jur., Wills, sections 1285, 1299. However, a technical application of the statutory rules of intestate succession will not be permitted to defeat the manifest intention of the testator as gleaned from a consideration of (a) *all* the language contained in the four corners of the will, (b) the scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts. In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504–505. This court has continually stated that its primary and foremost objective in construing a will is to ascertain the testator's intent, which, if expressed, must prevail.

Consideration of a case analogous to the facts in the case before us is relevant to plaintiff's contention. In Warden v. Overman, 155 Iowa 1, 135 N.W. 649, the residuary clause of a will executed by the testatrix gave the remainder of her estate to "my lawful heirs * * * to be divided between them in shares and proportions as provided by law, and under the inheritance laws now in force in the State of Iowa." In response to a petition filed by the testatrix's collateral heirs, the defendant alleged she was the adopted daughter and sole heir of the testatrix. Affirming the lower court's conclusion the collateral heirs of

the testatrix were entitled to receive the entire residuary estate, this court recited the following rules of construction of wills:

" * * * [W]e must read the will in all its parts and in light of the admitted circumstances under which the instrument was made and determine what right, interest, or estate is thereby conferred upon the appellant. Assuming the validity of the adoption, it follows, as of course, that appellant acquired the legal status of a child and prospective heir of the testatrix, and if this fact were uncomplicated with other inconsistent provisions, or other inconsistent relevant facts and circumstances, a general reference in the will of the foster mother to her heir or heirs would doubtless be treated as having application to applicant. But the case as shown by the record before us is incapable of such easy solution. The question with which we are confronted is whether when testatrix says 'all the rest, residue and remainder of my property I give, devise and bequeath to my lawful heirs (excepting therefrom by nephew, Amos E. Burwell and Frank Burwell)' to be divided between them in shares and proportions as provided by law, she intended thereby to give the residue of her estate to her adopted daughter, or to those persons who would at her death stand in the relation of her heirs by blood. That she made use of the more or less technical word 'heirs,' which, strictly construed, might exclude her collateral relatives, is by no means decisive of this question.

"The thing to be sought for in the interpretation of the will is not the mere book definition of the words there employed, but what is the meaning, with which the testatrix used them? Whom did she have in mind in speaking of her 'lawful heirs'? In answering this question the technical or strictly legal meaning of the words is not to be overlooked, but it is not controlling if it clearly appears that the testatrix made use of them in a sense which is less exact or less scientific, and, in determining the question, the court must consider the will in all its parts, and in the light of all the relevant facts and circumstances under which the instrument was executed.

"In other words, if by the words 'lawful heirs' she had reference to her heirs of the blood and not to her adopted daughter, that intention must be respected and enforced." *Id.* 155 Iowa at 7–8, 135 N.W. at 651–652.

Accordingly, even though the testatrix in the *Warden* case connected the technical phrase "lawful heirs" with the language "under the inheritance laws now in force in the State of Iowa," an adopted daughter, who qualified as a "lawful heir" under the inheritance laws, was held not entitled to share the residuary estate with heirs of the blood. *See* Wright v. Copeland, 241 Iowa at 453, 41 N.W.2d at 106.

Similar principles of law are stated in Schaefer v. Merchants National Bank of Cedar Rapids, 160 N.W.2d 318, 320–321 (Iowa 1968), where the court said:

"The word 'heirs' does not have a fixed meaning and the sense in which the word is used by testatrix must be determined from the instruments read as a whole and in the light of all the relevant facts and circumstances under which the instrument was executed. * * * [citing authorities]

"Unless a contrary intent appears from the evidence 'heirs' will be construed as those who would take under the statutes of descent; * * * [citing authorities] but the strict legal meaning is not controlling and if it fairly appears that the testatrix used the term in some other sense, the technical meaning will not be permitted to defeat the manifest intention of the testatrix. * * * [citing authorities]."

This language appears in Theen v. Miller, 250 Iowa 1144, 1148, 96 N.W.2d 734, 736:

"The term 'heirs' or 'heirs-at-law' as used in a will may have a different meaning than that of 'he upon whom the law cast the estate immediately upon the death

of the owner thereof,' if such intent of the testate appears in the will."

■ It is apparent, then, the words "my remaining heirs-at-law in accordance with the laws of inheritance" have no fixed meaning, as plaintiff urges, and the sense in which the language is used by testator must be determined from the instrument read as a whole and in light of all the relevant circumstances surrounding him when the will was executed.

Plaintiff's initial premise stated earlier that the testator's intention as ascertained from the entire will is immaterial is unsound.

■ The court cannot simply ignore testator's explicit reference to the inheritance statutes. However, if there is a satisfactory testamentary intimation that testator intended the quoted language to be construed otherwise than in the usual and ordinary way, the term "heirs-at-law" will have a different meaning than those who would be entitled to succeed to his estate, in case of intestacy, by virtue of our statute relative to succession.

The question thus presented is not one of plaintiff's right to inherit through his adoptive parents; rather it is whether all the language of the will, read in light of the circumstances surrounding the testator, clearly demonstrates an intention that the devise provided for in paragraph 3 of item 2 was for the benefit of his lineal descendants to the exclusion of plaintiff.

■ In this equitable proceeding our review is de novo. Rule 334, Rules of Civil Procedure.

■ At the time J. M. Mathew executed his will on June 29, 1938, one of his six children had died leaving three surviving children. Testator's three daughters were then married. Whether Walter was married is not disclosed by the record. Nor are we told how long Walter had been married to Marianne when he adopted her 20-year-old married son in May 1951.

In adopting a scheme of distribution of the assets of his estate, testator directed in the third paragraph of item 2 of his will that after the death of his wife Ethel his estate should be distributed one-sixth to each of his five named children living at the time of the execution of his will. The remaining one-sixth was to be distributed equally between the three children of the testator's deceased son.

Only in the case of Walter did testator provide that his share was contingent upon his being living or leaving a child or children of his body if he was deceased at the time of the death of Ethel.

Item 3 of the will provided for the distribution of testator's estate in the event his wife, Ethel, predeceased him. Under this item, Walter was to receive one-sixth of the estate if either he or a "child of his body" survived the testator. It was further provided in this item that should neither of those contingencies obtain at the time of testator's death, "then I give and bequeath an undivided one-fifth ($\frac{1}{5}$) share of my property to my son Harry E. Mathew, an undivided one-fifth ($\frac{1}{5}$) share thereof to my daughter Cora B. Waddell, an undivided one-fifth ($\frac{1}{5}$) share thereof to my daughter Alta Langlois, an undivided one-fifth ($\frac{1}{5}$) share thereof to my daughter, Mae Greenlee, and undivided one-fifteenth ($\frac{1}{15}$) share thereof to my grandson Paul J. Mathew, an undivided one-fifteenth ($\frac{1}{15}$) share thereof to my grandson Bruce E. Mathew and an undivided one-fifteenth ($\frac{1}{15}$) share thereof to my granddaughter Frances M. Soderstrom, to be their own absolutely."

Again, in this item the testator provided that Walter's share was contingent upon his being living or leaving a child or children of his body if he was deceased at the time of the death of testator. This provision was not used in reference to any other devise provided for in item 3.

We conclude the fact testator made use of the more or less technical words, "my remaining heirs-at-law in accordance with the laws of inheritance now in force in the State of Iowa," should not be permitted to defeat testator's manifest intention that his entire estate would be distributed under either item 2 or item 3 to seven specified persons, all of whom were his lineal descendants.

It fairly appears testator did not use the quoted words in their technical or strict legal meaning but rather in a less exact or less scientific sense in limiting the devise of the one-sixth share which did not vest in Walter so that it would go to testator's bloodline to the exclusion of the adopted son.

A consideration of *all* the language contained in testator's will convinces us the trial court was correct in dismissing plaintiff's petition.

The case is therefore

Affirmed.