. OLE STENSON FURENES, STINE STENSON FURENES, *et al.*, v. JOHN SEVERTSON, *et al.*, Appellants.

**Wills:** "MY HEIRS" CONSTRUED: *Alienage.* A devise of half of the estate of a childless testator to his heirs and the other half to the heirs of his wife, passes the title to half such remainder to the collateral heirs of testator, although they are all non-resident aliens, and the heirs of the wife are citizens, under Acts Twenty-second General Assembly, chapter 85, section 2, authorizing any non-resident alien to acquire and hold real property under specified conditions. The words "my heirs" are here used as a description and not to denote succession. It was not the intent of testator to exclude such of his "heirs" as were unable to take by descent, on account of alienage.

**ALIEN:** *Devise.* A non-resident alien may take by devise under Acts Twenty-second General Assembly, chapter 85, section 1, prohibiting a non-resident from acquiring title to or taking any lands by devise or otherwise except as afterwards provided, and section 2, authorizing non-resident aliens to acquire and hold three hundred and twenty acres of land, if within five years from the date of purchase the same is placed in the actual possession of a relative within the third degree, and such relative becomes a naturalized citizen within ten years from the purchase.

**Adjudication:** PARTIES: *Partition.* A decree in partition is not binding on parties interested in the land, who were not made parties thereto.

*Appeal from Story District Court.*—HON. S. M. WEAVER, Judge.

THURSDAY, MAY 20, 1897.

SUIT in equity to partition real estate. The lower court sustained a demurrer to the defendants' answer, and they appeal.—*Affirmed.*

*M. P. Webb* and *Read & Read* for appellants.

*E. H. Addison, W. G. Harvison,* and *D. J. Vinje* for appellees.

DEEMER, J.—Thor Olson and his wife, who were natives of Norway, although citizens of the United States, resided, prior to their death, in Story county. Olson was seized of the lands which are the subject of controversy, and before his death executed a will, in which he devised his real estate to his wife for life, remainder over, one-half to his heirs and one-half to the heirs of his wife. The widow elected to accept the provisions of the will, and entered into the possession of the real estate, which she held until the date of her death, August 29, 1892. These parties had no children. The plaintiffs are the collateral heirs of Thor Olson, and are each and all non-resident aliens. The defendants are the collateral heirs of the wife, and they, or some of them, are residents and citizens of the United States. After the death of Olson and his wife, the defendants had the lands, of which their ancestors died seized, partitioned among themselves, but plaintiffs were not made parties to the suit. The contention of appellants under these facts is that plaintiffs cannot

inherit from Thor Olson on account of their alienage, because of the provisions of chapter 85, Acts Twenty-second General Assembly, and that, as they could not inherit from him, they are not his heirs, and therefore cannot take under the will. The act of the general assembly referred to, so far as material, is as follows: Section 1: "Non-resident aliens * * * are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase, or otherwise only as hereinafter provided. * * *" Section 2: "Any non-resident alien may acquire and hold real property to the extent of 320 acres * * * provided that within five years from the date of purchase of said property the same is placed in the actual possession of a relative of such purchaser; the occupant being related to such owner within the third degree of kindred; * * * and further provided that such occupant become a naturalized citizen within ten years from the purchase of said property as aforesaid." Now, in recognition of the familiar doctrine that one who takes by devise is a purchaser, we have held that a non-resident alien may take by devise under the exception contained in this statute. *Bennett v. Hibbert*, 88 Iowa, 154 (55 N. W. Rep. 93). So that the only question which remains on this branch of the case, is, do the plaintiffs take by descent? The solution of this inquiry involves a construction of the words "my heirs," as used by Thor Olson in his will. The canons of construction with reference to such instruments are well understood, and the cardinal one is that the intention of the testator is the first great object of inquiry. Turning to the will, it is evident that the testator did not intend to devise all this real estate to the heirs of his wife. This he carefully guarded against by saying they should receive but one-half. And yet appellants say the will should be so construed as to give them all.

Another tenet is that a will must be read in such a way as to give effect to every portion of the instrument unless there arises some invincible repugnance, or unless some portion of it is absolutely unintelligible. The testator manifestly intended some class of persons by the use of the words "my heirs," and the persons so intended were other than the heirs of his wife. This is perfectly patent. Now, it is well known that persons unskilled in the law use the word "heirs" as descriptive of a class of persons who cannot, in fact, take as heirs. In recognition of this doctrine, the words "heirs at law" have been construed to mean adopted children, next of kin, heirs of a particular class or description, heirs presumptive, heirs apparent, heirs at the date of the will, heirs at the decease of the testator, or heirs at even a later date, the construction resting in each particular case upon an ascertainment of the testator's intention from the words used, from the context of the instrument, and from the surrounding circumstances. See *In re Swenson's Estate* (Minn.) 56 N. W. Rep. 1115, and cases cited; 2 Jarman, Wills (6th Am. Ed.), 905, *et seq.*; Schouler, Wills, sections 470, 533, 542. So in the case of *Collins v. Phillips*, 91 Iowa, 210 (59 N. W. Rep. 40), we held, in construing an instrument creating a trust, that the word "heir" should be held to mean "child." It is evident that the words "my heirs" were used in the will not to denote succession, but to describe the devisees, and they should not be given their strict legal meaning, for that was not the testator's intention. If these heirs had been specifically named, instead of designated by a general term, there would be no question of their right to take and hold the property subject to the conditions imposed by the statute. Finding, as we do, that the testator intended to include them under the general classification, the result must be the same. A third rule of construction is that, where

language is susceptible of two constructions, that interpretation is to be preferred which will render valid all the provisions of the will. And another is that a will should be so construed as to prevent even partial intestacy. Applying these rules to the facts above recited, and it is clear that the testator intended to devise one-half of his estate to those of his own blood, who would inherit it had there been no statute to prevent. Again, the very statutes upon which appellants rely, speak of alien heirs, and give color to the thought that such a term is a proper one, and descriptive of a particular class of persons. We need not refer to the great number of cases which tend to support our conclusions; for it has been frequently said cases are of little help, except as they lay down principles which aid in arriving at the true intent of the testator. We have no doubt whatever that the testator intended to devise one-half of the remainder of his estate to the plaintiffs, and his intent should be respected and enforced.

A further claim is made that the decree in partition is *res adjudicata*, and a bar to plaintiffs' recovery. The decree was rendered in a suit to which the defendants alone were parties. Surely, such a decree is not binding upon the plaintiffs. They cannot be concluded without their day in court, and their property cannot be taken without due process of law; by which latter term is meant that the right of a person to his life, liberty, or property shall not be devested except by a judicial determination after due notice in pursuance of a general law. The case of *Stemple v. Herminghouser*, 3 G. Greene (Iowa), 408, is not in conflict with this conclusion. The arguments in the case have taken a very wide range, but we regard the questions heretofore considered the controlling ones, and must decline to enter into other fields. The case

of *Furenes v. Mickelson*, 86 Iowa, 508 (53 N. W. Rep 416), although referring to the will of Olson, did not attempt to construe it, and is not an authority for either side of this controversy. The judgment and decree of the district court is AFFIRMED.