RUTH WIESE SLAVENS, Appellee, v. ANNA BAILEY et al., Appellants.

No. 43557.

1092

December 15, 1936.

J. G. Kammerer and Baldrige & Bailey, for defendants Anna and Walter Bailey and Etta Freers and A. H. Freers, appellants.

Charles P. Hanley and J. F. Devitt, for plaintiff, appellee.

Herbert G. Thompson, for defendant, Frieda Reger and intervenor Herbert G. Thompson, appellees.

Gus Allbee, for intervenor E. K. Tyler and defendant D. W. Bates, Superintendent of Banking, Receiver, appellees.

STIGER, J.—William T. Wiese died testate May 14, 1918, leaving his wife Malinda C. Wiese and eight children surviving him. One of the children, Bessie Wiese, was an incompetent having the mentality of a child three or four years old. Physically she was strong and vigorous. She lived with her father and mother on their farm until the death of Mr. Wiese and then lived with her mother in Muscatine until the mother died in 1927.

In 1908, Bessie gave birth to a child, Ruth, who is the plaintiff in this case. Ruth lived with her mother and grandparents

until the death of William Wiese and then lived with her grandmother Malinda C. Wiese and her mother Bessie in Muscatine until the death of Malinda C. Wiese in 1927. After this time Bessie lived with her relatives until her death in 1932. Soon after the death of Malinda C. Wiese, Ruth married. This marriage was annulled and Ruth lived with her aunts until she married Charles Slavens. Ruth and her husband lived in several cities, one of which was Iowa City. They also lived with Mrs. Reger and Mrs. Freers who were Ruth's aunts. When Ruth and her mother went to live with Malinda C. Wiese in Muscatine in 1918, Ruth was 10 years old. She attended the public schools and later worked as a telephone operator. Mrs. Wiese, Ruth and Bessie lived together until Mrs. Wiese passed away in 1927. After the death of her mother, Bessie lived at the homes of Etta Freers, Anna Bailey and Frieda Reger, her sisters and William Wiese, Jr., her brother until her death in 1932. During all of Bessie's life it was necessary to keep watch over her constantly. All of the family knew she should not be left alone and made every effort to have some member of the family with her at all times. She could do some house work, such as scrubbing and washing dishes, but even this type of work was not done well. She could not dress herself properly.

The material parts of the will of William Wiese, Bessie's father, made in 1916, are as follows:

"Par. 3. After the death of my said wife, and as soon as my executors shall deem it expedient to do so, I direct they sell all my real estate of which I may died seized. * * *

"Par. 4. To my daughter, Bessie Wiese, I give the sum of Seven Thousand ($7,000.00) Dollars during her life time. That said sum so given her shall be invested in a first mortgage real estate loan approved by my executors and which shall draw not less than five (5) per cent per annum. But should my daughter Bessie be taken with a lingering sickness and the interest money be not sufficient to defray the expense of her keeping, then in that case shall the executors be allowed to use as much of the $7,000.00 principal as will be necessary to defray all expenses of living and sickness.

"I realize that my said daughter Bessie will be quite a charge, and that she will need a lot of care and attention, therefore after her death, I give and bequeath to the heir or heirs

1094

having the care and actual keeping of Bessie, the said sum of Seven Thousand ($7,000.00) Dollars given to her during her life time, or what ever amount there shall be remaining and after paying all expenses of her keeping and her funeral expenses. But should my daughter Bessie die before the probation of this my last will, then in that case the said sum of $7,000.00 given to her during her life time shall be divided equally, share and share alike, between the surviving heirs. * * *

"Par. 7. After paying the above legacies I direct that my executors shall divide the remainder of my estate, share and share alike *to the following heirs,* to-wit: Anna Bailey, daughter; Etta Freers, daughter; Lizzie Lewis, daughter; Freda Reger, daughter; William T. Wiese, Jr., son; Louie Wiese, son; Albert Wiese, son; and Ruth Wiese, granddaughter, who is a daughter of Bessie Wiese. * * *" (Italics ours.)

After the death of Malinda C. Wiese in 1927, it was agreed that the relatives having the care and actual keeping of Bessie would receive $4.00 per week and the remainder of the income of the $7,000.00 trust fund would be accumulated and used to pay the cost of illness or otherwise for Bessie's benefit. It is conceded that Anna Bailey, Etta Freers and Frieda Reger, sisters of Bessie and William Wiese, Jr., her brother, cared for and actually kept Bessie and are entitled to participate in the bequest of the remainder of the $7,000 trust fund under paragraph No. 4 of the will. From 1927 until her death in 1932, Bessie stayed with Anna Bailey 83 weeks, Etta Freers 83 weeks, Frieda Reger 47 weeks and William Wiese, Jr., 22 weeks, and each received $4.00 per week in payment for such services to Bessie.

The plaintiff, Ruth Wiese Slavens, brought this action against the children of William Wiese and others alleging that she was an heir of William Wiese and that she cared for and had the actual keeping of her mother Bessie and is entitled to participate equally in the bequest of the $7,000 provided for in paragraph No. 4 of the will with the three sisters and brother of her mother.

The defendants denied plaintiff was entitled to any part of this bequest. The trial court found for the plaintiff and decreed that she was entitled to an undivided one-fifth of the remainder interest in the said trust fund. Defendants appeal.

The errors relied on by appellants are as follows: No. 1.

The court erred in holding that the plaintiff was an heir of William Wiese. No. 2. The court erred in finding that the plaintiff was entitled to an equal division of the remainder of the trust fund created and disposed of by paragraph No. 4 of the will. No. 3. That the plaintiff is not entitled to participate in the bequest of the remainder of the said trust fund because she failed to prove that she had the care and actual keeping of her mother Bessie.

I. The first question to be determined is whether or not plaintiff was an heir of William Wiese under the following provision of the will: "I realize that my said daughter Bessie will be quite a charge, and that she will need a lot of care and attention, therefore after her death, I give and bequeath to the heir or heirs having the care and actual keeping of Bessie, the said sum of $7,000.00 given to her during her life time or what ever amount there shall be remaining and after paying all expenses of her keeping and her funeral expenses."

█ ██ The word "heirs" used by a testator does not have a fixed meaning because of the cardinal rule of construction of wills that the intention of the testator must be ascertained if possible, and the sense in which the word is used must be determined from the will taken as a whole and the circumstances. The technical meaning of the word will not be permitted to defeat the manifest intention of the testator. The word "heirs" ordinarily means the person on whom the law casts the estate immediately on the death of the ancestor. 69 C. J. 207; Warden v. Overman, 155 Iowa 1, 135 N. W. 649; Furenes v. Severtson, 102 Iowa 322, 71 N. W. 196; Johnson v. Bodine, 108 Iowa 594, 79 N. W. 348.

Words occurring more than once in a will are assumed to be always used in the same sense when the context does not show a contrary intention. In re Stumpenhousen's Estate, 108 Iowa 555, 79 N. W. 376; Ellsworth College v. Carleton, 178 Iowa 845, 160 N. W. 222.

With these rules of construction in mind we turn to paragraph No. 7 of the will which reads as follows:

"After paying the above legacies I direct that my executors shall divide the remainder of my estate, share and share alike *to the following heirs* to-wit: Anna Bailey, daughter; Etta Freers, daughter; Lizzie Lewis, daughter; Frieda Reger, daughter;

William T. Wiese, Jr., son; Louie Wiese, son; Albert Wiese, son; and Ruth Wiese, granddaughter, who is a daughter of Bessie Wiese. * * *'' (Italics ours.)

In this paragraph the testator designates his granddaughter Ruth as an heir, though in fact, she was not an heir because her mother Bessie was living and outlived the testator. Clearly in the mind and thought of the testator, Ruth Wiese, his granddaughter, was his heir. It was his manifest intention that she be placed on an equality as an heir with his sons and daughters.

With reference to that part of paragraph No. 4 of the will which bequeaths the remainder of the trust fund to the heir or heirs having the actual care and keeping of Bessie it is incumbent upon plaintiff to establish that she is an heir under this clause of the will. As above stated in paragraph No. 7 of the will, the testator clearly and specifically included Ruth Wiese the plaintiff as an heir and so denominated her. Under the rule that words occurring more than once in the will are assumed to be used in the same sense unless the context shows a contrary intention we find nothing in the will that indicates that the testator had a different intention in the use of the word heir or heirs in the other parts of his will. We see no reason for assuming that the testator did not contemplate that Ruth might be one of the persons who would care for and actually keep her helpless mother. When he made his will in 1916, Bessie was 39 years old, strong and vigorous physically, with the prospect of living many years.

It cannot be said that the testator in using the word heir or heirs in paragraph No. 4 of his will thought that Ruth would not share in the care and keep of her own mother along with the sisters and brothers of Bessie so far as she might be able to do so. The record reveals that at an early age the mother-love in Ruth's heart was manifested in the care bestowed on her mother and concern for her welfare. As hereafter stated, the record shows Ruth did care for and actually kept her mother. We conclude that the testator used the word heir or heirs at all times in the will in the same sense that he used the word in paragraph No. 7 of the will wherein he stated that Ruth was his heir and that wherever the testator used the word heir or heirs in his will he intended to include his granddaughter, the plaintiff herein.

▮▮▮ II. Appellants next urge that the heirs entitled to

share in the remainder interest in the $7,000 trust fund should not take in equal shares but that each should share in the fund in proportion to the number of weeks that Bessie was cared for and actually kept. They claim that Bessie lived with the heirs a total of 240 weeks and that, for example, Etta Freers who had Bessie in her home 84 weeks should receive 84/240 or 7/20 of the fund. We stated in the case of Johnson v. Bodine, 108 Iowa 594, 596, 79 N. W. 348, 349, as follows:

"It will be noticed that the will directs that testator's estate, both real and personal, be divided between his heirs at law."

The court then quotes from the case of Daggett v. Slack, 8 Metc. (Mass.) 450, 453.

"The court are of the opinion that, according to the established rule of law, a devise to 'heirs', whether it be to one's own heirs or to the heirs of a third person, designates, not only the persons who are to take, but also the manner and portions in which they are to take, and that, when there are no words to control the presumption of the will of the testator, the law presumes his intention to be that they shall take as heirs would take by the rules of descent."

There are no words that control this presumption that the heirs take equally under this bequest nor is there anything in the will to show a different intention. It must be remembered that the will provides that the executors may use the income and so much of the principal as will be necessary to defray the expenses of keeping Bessie including illness and funeral expenses. The heirs who kept Bessie agreed to accept the sum of $4 per week in full payment for the services. No doubt they would have been justified in fixing a larger amount for this service but they did not choose to do so. All of the heirs who kept Bessie have been fully paid for their services as contemplated by the will and for all advancements made for her benefit. The bequest of the remainder of the $7,000 trust fund was not in payment for the services to be rendered Bessie by the heirs. The testator had made full provision for the payment for the expenses of properly keeping Bessie regardless of the persons who might undertake her care. It is plain that it was the desire of the testator that members of the family should care for and have the custody of his daughter. She was the object of his tenderest solicitude

and realizing her helplessness knew that his family understood Bessie and could and would give her the care she required and to avoid the possibility that Bessie would be given over to the care of strangers, he offered this substantial gift to those of his heirs who would accept the responsibility. He hoped that this gift would insure that Bessie would be under the sympathetic and understanding care of her own people. The gift was an inducement to the heirs of the testator to undertake the arduous and exacting task which required constant surveillance of this unfortunate woman. The gift was to a class the members of which would be determined on the death of Bessie and those heirs who qualified for membership in the class were entitled to share equally in the fund.

Appellants rely on the case of Lowell v. Lowell, 185 Iowa 508, 170 N. W. 811, wherein we held that there is a presumption that joint grantees in a deed take equally but that the presumption is rebuttable and, upon proof of unequal contributions to the purchase price, this presumption was overcome and another presumption arose that they intended to share in proportion to the amount contributed by each to the purchase price. In the instant case the contribution made by the heirs was the care and actual keeping of the incompetent for which services they fixed their own price and were fully paid. The Lowell case is not applicable to the facts in this case.

We conclude the trial court was right in holding that the funds should be divided equally among the heirs who cared for Bessie.

III. Appellants next contend that the plaintiff did not come within the provisions of paragraph No. 4 because she did not have the care and actual keeping of her mother. The chief care that Bessie required was constant companionship and supervision. The plaintiff lived with her mother and grandmother Malinda C. Wiese in Muscatine from 1918 to 1927, and during much of the time the grandmother was in poor health. During this period of 9 years Ruth bestowed upon her mother much personal care, was a companion to her and attended her as much or more than any other of the relatives. The plaintiff also cared for her mother during the later years that they lived with Bessie's sisters. While living in Iowa City, Bessie lived with them a period of 3 weeks and Ruth was paid for this service at the rate of $4 per week. At other times while Bessie was staying with her

sisters they would leave her with the plaintiff and her husband during the daytime and on such occasions Ruth would look after and furnish the meals for her mother.

Without further extending the record into the opinion we hold that Ruth, under paragraph No. 4 of the will, was an "heir having the care and actual keeping of Bessie".

IV. Frieda Reger had assigned all of her interest in the William Wiese estate to Herbert G. Thompson, a defendant, and E. K. Tyler, intervenor, and William T. Wiese had assigned his interest in the estate to Peoples State Bank of West Liberty, Iowa, of which bank the defendant D. W. Bates, Superintendent of Banking, is the receiver.

The trial court decreed that the interest of William Wiese and Frieda Reger in the trust fund should be paid to the respective assignees.

Appellants complain of this ruling. We have given this assignment of error of the appellants due consideration, find no merit therein and the trial court was right in so ruling. There being no error in the case, it is affirmed.—Affirmed.

PARSONS, C. J., and ANDERSON, MITCHELL, HAMILTON, RICHARDS, DONEGAN, KINTZINGER, and ALBERT, JJ., concur.