IN RE TRUSTS under will of EMMA E. YOUNG.

BEREANICE B. POOL, conservator of the person and estate of DOROTHY POOL, an incompetent, appellant; BOARD OF PARK COMMISSIONERS et al., appellees.

No. 47930.

(Reported in 49 N.W.2d 769)

NOVEMBER 13, 1951.

REHEARING DENIED JANUARY 11, 1952.

Leland K. Neeves, of Chicago, Illinois, and E. C. Halbach and Alan H. Mayer, both of Clinton, for appellant.

Reid L. Hunt and John Powell, both of Tipton, for appellee Board of Park Commissioners.

Homer I. Smith and O. P. Petty, both of Clinton, for appellee City National Bank of Clinton, trustee.

SMITH, J.—We are required here to determine: Whether the entire net income of certain testamentary trusts vests in the

beneficiary as it accrues; or whether it is to be expended only as and to the extent needed. A second question is: Whether it is the trustee's duty to administer and pay out the income directly according to the beneficiary's needs as they arise; or whether the trustee must turn the income over to the duly appointed and qualified conservator of the incompetent beneficiary's person and estate "monthly or as received."

Of course if it be found the income vests as it comes into being, such determination furnishes a practical answer to the second query. The trial court, in the order appealed from, dated November 3, 1950, did not specifically pass on the first proposition, but stated "that there is no question of accumulations at issue before the court at this time." The court did however do so indirectly by its order: "That the trustee has the discretionary power and duty to either apply the funds coming to it under paragraphs Second and Third of the will, directly itself, for the purposes set forth in the will, or to turn them over to Dorothy Pool's conservator for the same purposes. The trustee shall, however, maintain careful supervision of the funds to the extent necessary to carry out the provisions relating to Dorothy Pool, the trustee having the discretion to change the manner of the application of the funds at any time it sees fit in its sound discretion and judgment."

The conservator appeals. The Clinton, Iowa, Board of Park Commissioners, as residuary legatee, is appellee. The appellee Bank, as trustee, of course, desires direction.

Emma E. Young, the testatrix, of Clinton, Iowa, died June 4, 1926, leaving an estate, after taxes, of $2,300,000. The paragraphs of her will (executed March 2, 1926) which we are required to construe are as follows:

"Second. I hereby give, devise and bequeath to the Peoples Trust & Savings Bank of Clinton, Iowa, and Frank W. Ellis, of Clinton, Iowa, Trustees, in trust, the sum of Six Hundred Thousand Dollars ($600,000.00), which sum shall be set aside in cash or good securities from my estate by my Executors and be transferred to said Trustees as a trust fund to be invested and reinvested from time to time, the income whereof shall be paid monthly or as received for the benefit of my granddaughter Dorothy Pool of Pasadena, California, for and during the term

of her natural life only, and said income shall be used for the comfort, care, support and maintenance of said Dorothy Pool. Upon the death of said Dorothy Pool said principal sum of Six Hundred Thousand Dollars ($600,000.00) and accumulations, if any, shall become a part of my estate subject to the terms of this will.

"Third. I hereby give, devise and bequeath the further sum of One Hundred Thousand Dollars ($100,000.00) to said Trustees, in trust, the income whereof may be used for any purpose for the benefit of said Dorothy Pool during the term of her natural life only. Provided, however, that the said Trustees may, in their judgment, use any part of said principal sum of One Hundred Thousand Dollars ($100,000.00) for the benefit of said Dorothy Pool for and during the term of her natural life only, in the event that any and all income herein provided for that purpose shall be inadequate to furnish said Dorothy Pool with all the care, comfort, convenience, nursing and maintenance which may be deemed expedient, whether for necessaries or luxuries; and upon the death of said Dorothy Pool said sum, or the remainder thereof, shall become a part of my estate, subject to the terms of this will. I will that if Marvin B. Pool, father of my said granddaughter Dorothy Pool, should not survive Dorothy Pool, then it shall be the duty of my Trustees hereunder in any event to further provide in every respect for the private and personal care of said Dorothy Pool in a manner which shall equal the care and provision that has been made for her up to the present time."

Other paragraphs need not be quoted. There are many and large bequests, some outright and some in trust, to various collateral relatives and charitable purposes. There is a provision, residuary in character, "for the acquisition, maintenance and improvement of the public parks of the City of Clinton", which constitutes the claimed interest of the Board of Park Commissioners of the city of Clinton in the proceedings and in this appeal.

Sometime after Mrs. Young's death the Peoples Trust & Savings Bank, one of the named trustees, closed its doors and resigned and Mr. Ellis became sole trustee and so continued until his death. The present trustee was then appointed.

Dorothy Pool, the beneficiary, is the only grandchild, and apparently the only living descendant, of the testatrix. Her mother, Grace Young Pool, died long before the will was drawn. Dorothy was and is hopelessly afflicted mentally and physically and incapable of caring for herself. It is conceded her grandmother knew of her condition. At the time of her grandmother's death Dorothy was thirty-one years old. Her father lived in Chicago, but a home was maintained for her in Pasadena, California. Her father was also a legatee under the will—in the sum of $50,000. After Mrs. Young's death he was appointed conservator of his daughter's person and estate upon a finding of her incompetency. He continued as such conservator until his death, April 15, 1950. During all that time the entire net income of the trusts was paid to him, first by the original trustee, Frank W. Ellis, and after Mr. Ellis' death (February 14, 1949) by Mr. Ellis' successor, the present trustee. During Mr. Ellis' life the funds were treated as if they were Dorothy's own property and were administered by the conservator without accounting to the trustee. The trustee's reports showed such handling of the matter by the trustee and were from time to time approved without question or objection. These approvals were ex parte but their significance, either as constituting res judicata or merely as a course of conduct of the parties in interest, need not be appraised in view of our conclusions hereinafter announced.

Mr. Ellis, the trustee, was an eminent attorney of Clinton, a long-time friend, relative by marriage, the counselor of testatrix and draughtsman of her will. The present conservator was appointed upon the death of Mr. Pool. She is his widow and a cousin of his first wife, Dorothy's mother. She is about Dorothy's age and they played together as children.

I. The general rule for interpretation of a testamentary trust is of course the same as for the interpretation of wills generally: The intent of the testator must be sought from the language itself, read in the light of surrounding facts and conditions; that is, we seek the meaning of what he said, not necessarily what he intended to say. In re Will of Hagan, 234 Iowa 1001, 14 N.W.2d 638, 152 A. L. R. 1296; In re Estate of Eason, 238 Iowa 98, 26 N.W.2d 103; Henkel v. Auchstetter, 240 Iowa 1367, 39 N.W.2d 650.

We have sketched the circumstances which are shown as throwing some light on the language of these trust provisions of the will. Other details will appear as we proceed. It must be conceded there is ambiguity which calls for construction. Two expressions in paragraph two manifestly require reconciliation, viz: (1) "* * * the income whereof shall be paid *monthly or as received*"; and (2) "Upon the death of the said Dorothy Pool said principal sum * * * *and accumulations,* if any, shall become a part of my estate * * *."

The appellee Park Board would read the first quoted language as if the words "as received" meant the same as if they read "as required", making the will read that the income be paid "as required" or "as needed." It argues that the direction as to the disposition of the fund *"and accumulations"* at Dorothy's death refers to "accumulations" of interest unused and undistributed; that the expression first above referred to was merely a directive as to time of payment and can properly be construed only as an indication the testatrix intended that care, support and maintenance be furnished *promptly;* and it urges the improbability that Mrs. Young, knowing Dorothy's hopeless condition and the unlikelihood of her having issue, would intend to build up an estate from possible accumulation of unneeded income to be left at her granddaughter's death.

These are valid but not necessarily conclusive arguments. As pointed out by appellant, a direction that income "be paid monthly or *as received"* is quite inconsistent with an intention that the income be paid only *as needed.* And if it be argued improbable that testatrix intended to build up an estate that would belong to her granddaughter and pass at her granddaughter's death to presently undetermined heirs, may it not be argued as at least equally improbable that she desired the residuary estate to profit by such unused income?

Nor is the direction as to "accumulations" necessarily a reference to accumulated *income.* In fact a careful examination of the language suggests that it means, not accumulation of *interest* but of principal, that is, increase of the value of the principal fund—capital gain—due to an exercise of the power "to invest and reinvest", granted by the will, or to economic causes resulting in real or apparent increase.

II. Our difficulty here is due to a condition frequently present in cases of this kind—the probability that, while testatrix' ultimate intention and purpose were clear in her mind, she had no clear and definite idea as to some considerations and details that would or might arise in the carrying out of her main purpose.

It is evident that while Mrs. Young may have given no particular thought to the possibility the income *might be more* than necessary, she very definitely visualized the opposite possibility—that the income *might prove insufficient*. Witness the provision of paragraph three for a $100,000 additional trust, the corpus of which would be available in the latter event.

In this situation it is our duty so to construe the will as to ascribe to testatrix such intention as seems most nearly consistent with the entire language used and best calculated to attain the ultimate end she clearly had in mind. This is but another way to say ambiguous language is to be construed in favor of the general or primary intent manifest from the instrument, taken as a whole. 69 C. J. 67, note 79.

III. Employing this technique we are led to conclude the testatrix intended her unfortunate granddaughter to have the total income of the $600,000 trust for the purposes stated, regardless of immediate needs as they might arise.

There is competent evidence she knew that although Mr. Pool lived in Chicago, Dorothy was being cared for in a home maintained for her in Pasadena, California; that she was constantly in closest touch with the situation of her granddaughter by letter, one to three or four times a week, and by a regular Sunday morning message from the nurse who was in almost continuous charge. She certainly knew Dorothy was under care of two—sometimes three—nurses; that she was subject to epileptic attacks and had been at times so violent that it required the combined strength and effort of several to control her and prevent her from injuring herself or others. Testatrix of course knew of consultations regarding Dorothy's condition with specialists at home and abroad, and that in the home in California there was maintained a complete household including a cook, a chauffeur and a gardener, besides the nurses.

All this was of course while Mr. Pool was alive. It is pos-

sible, though the record does not show, that the grandmother contributed to the maintenance of this establishment. The facts have importance as showing conditions, known to testatrix, which make it inconceivable she intended the trustee in charge of these two trusts (as well as sixteen others, altogether amounting to almost a two-million-dollar trust fund) to act in the capacity of a virtual guardian of a mentally and physically helpless incompetent, to determine when, how much, for what and to whom the income was to be paid. Such a plan would be hopelessly impracticable and unworkable and would tend to defeat the very purpose for which the trusts were created.

The necessity for a guardian and a guardianship estate (or its equivalent) must have been clear to the testatrix and her wise counselor, as it is to us. It was the duty of the trustee to manage the trust funds so as to produce the maximum return consistent with safety and sound method, not to act as guardian of the person and property of an incompetent beneficiary.

In the Restatement of the Law of Trusts, section 128, comment e, pages 326, 327, it is said that where the trust instrument directs the trustee to pay or apply *"only* so much of the income and principal or either as is necessary for the education or support of the beneficiary" (emphasis supplied) the beneficiary cannot compel payment of more "than the trustee in the exercise of a sound discretion deems necessary." The comment adds: "It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. *The inference is that he is so entitled.*" (Italics supplied.) See In re Estate of Worman, 231 Iowa 1351, 4 N.W.2d 373.

We think where trustor does not expressly specify that *"only* so much * * * as is necessary" shall be used the inference is that no limitation is intended. Even more should that inference be indulged where the beneficiary is an incompetent and a guardian or conservator has been or can be judicially appointed to determine the needs under judicial supervision.

In 65 C. J., Trusts, section 731, page 852, it is said: "In general payment of the income of a trust estate should be made directly to the beneficiary, unless the trust instrument otherwise provides." Later, in the cited section, after saying payment to a

guardian has been held proper "even where the trust instrument authorizes payment directly to the beneficiary" the author says: "On the other hand, *where it is clearly the intention of the settlor* that the income [of the trust] shall be administered by the trustee alone, or that the trustee has active duties to perform, and a discretion to be exercised, with reference to the application of the income, the guardian of the beneficiary has no right to the income for the purpose of applying it to the beneficiary's use." (Emphasis supplied.)

Authority is also cited the other way, but we think under the record here the cited text states the applicable rule. There is no clear intention here limiting payment of the income to Dorothy's actual immediate needs.

The provision for disposition of the fund *"and accumulations, if any"* at Dorothy's death must, as already suggested, be held to refer to possible capital gains, not to undistributed and unneeded income. The term "accumulations" is used in connection with eventual disposition of the corpus of several other trusts set up by the will, the entire income of which other trusts clearly was intended to be distributed. In those instances it could not refer to accumulated income. This interpretation is consistent with the general rule that profits from sale of property belonging to the trust, or increases in value of the property, ordinarily constitute a part of the corpus and are not considered as income. 65 C. J., Trusts, section 736; 33 Am. Jur., Life Estates, Remainders, etc., section 336.

Again, the direction to pay over the income "monthly or as received" or similar language is used in connection with seven other trust funds provided in the will where there could be no uncertainty that the entire net income was intended to be distributed.

It is a sound and familiar rule of construction that when a word or expression occurs more than once in a will, it will be presumed to have been used in the same sense each time unless the context shows a contrary intention. In re Estate of Stumpenhousen, 108 Iowa 555, 560, 79 N.W. 376; Slavens v. Bailey, 222 Iowa 1091, 1095, 270 N.W. 367; Ellsworth College

v. Carleton, 178 Iowa 845, 851, 160 N.W. 222; Roskrow v. Jewell, 154 Iowa 634, 637, 135 N.W. 3, Ann. Cas. 1914B 63. Applying this rule to these apparently conflicting provisions we have no difficulty in reconciling them.

Nor do we overlook the substantial and practical benefit to the beneficiary in having accumulated income immediately available for use. If held by the trustee as an addition to the corpus it would be the duty of the trustee to invest it as corpus. If turned over to the guardian or conservator it may be held ready to be used as required.

We hold the net income of the $600,000 trust, after payment of tax and administrative expense, becomes vested and the property of Dorothy's guardian or conservator estate and payable as provided by the will. That is the intent that must be drawn from the language of the testatrix in the light of the known circumstances as shown by the record.

IV. What we have said disposes of the second question (so far as the $600,000 trust is concerned) posed at the beginning of this discussion. If the ownership of the income vests as earned it is the logical duty of the trustee, not merely its discretion, to turn that income over (after deduction of taxes and expenses) to Dorothy's conservator, charged with the official responsibility of looking after her "comfort, care, support and maintenance" including, as said in paragraph three, both "necessaries" and "luxuries."

This wealth belonged to testatrix. She knew her granddaughter's condition, her needs, the sort of life and care to which she was accustomed. She desired her wealth (to the extent provided) to be used for the continuation of her granddaughter's way of life. The record makes this clear.

We think it also clear she selected trustees, not to perform the duties of guardians, but to look after the business of managing the corpus of the trust so as to make possible the production of income for the continuing attainment of her primary purpose.

V. The conclusion thus far announced concerns the trust set up by paragraph two of the will. References to paragraph

three as well as to other parts of the will were made in an effort to construe doubtful or possibly conflicting language in paragraph two.

We think the order of the district court quoted at the beginning of this opinion is correct as applied to the $100,000 fund provided in paragraph three. It should be so limited.

There are important differences between the two paragraphs. Where paragraph two says the "income whereof *shall* be *paid* monthly or as received" paragraph three says "the income whereof *may* be *used*" for any purpose for the benefit of said Dorothy and there is no reference to "payment" or time of payment. While the difference in meaning between "shall" and "may" sometimes yields to other considerations we deem it significant here. Their use seems to have been deliberate and not careless.

The sentence in paragraph three immediately following confirms this opinion: "Provided, however, that the said Trustees *may, in their judgment,* use any part of said principal sum * * * for the benefit of said Dorothy Pool * * * in the event that any and all income herein provided for that purpose shall be inadequate to furnish * * * all the care, comfort, convenience, nursing and maintenance which may be *deemed expedient,* whether for *necessaries* or *luxuries."*

Read together, these sentences in paragraph three stamp the trust therein provided as a discretionary one, the discretion being that of the trustees. It is to be exercised, of course, in good faith and with due care, diligence and skill. See 54 Am. Jur., Trusts, sections 294, 311, 323; and subject to review by the court. In re Trusteeship of Cool, 210 Iowa 30, 230 N.W. 353.

The closing sentence of said paragraph three is a solemn admonition to the trustees again emphasizing the discretion to be exercised by them, especially after the death of Mr. Pool.

The record shows that the trustee-Bank is alert to this distinction. While mingling the corpus of the $600,000 trust with securities representing it and other trusts provided by the will (under the name "Life and Term Trusts") it has kept the $100,-000 trust entirely separate as the "Dorothy Pool Special Trust."

We do not deem it necessary to comment or pass on other arguments and contentions urged by the parties. The order of the trial court will be modified to require payment of net income of the $600,000 trust to the conservator as provided by paragraph two of the will and the income of the $100,000 trust according to the order of the trial court as written.—Modified and affirmed.

All JUSTICES concur.