JAY G. BUCHAN, appellee, v. BURTON F. BUCHAN and NORMA BUCHAN, his wife, appellants.

No. 50803.

(Reported in 118 N.W.2d 611)

December 11, 1962.

Dwight G. Rider, of Fort Dodge, and Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for Burton F. Buchan and Norma Buchan, defendants-appellants.

Archerd, Birdsall & Draheim, of Clarion, for plaintiff-appellee.

Dobbins & Fraker, of Champaign, Illinois, for defendant-appellee.

Evan Hultman, Attorney General, John M. Stull, Assistant Attorney General, and George W. Murray, all of Des Moines, for State of Iowa and Iowa State Tax Commission; and R. Ralph Austin, of Clarion, as attorney and guardian ad litem.

SNELL, J.—Rahymond Buchan, a resident of Illinois and the owner of real estate in Illinois and Iowa, died testate in 1907. He was not skilled in punctuation, spelling or syntax. His holographic, but attested will, was admitted to probate in Illinois and subsequently in Wright County, Iowa, as a foreign will. It is now before us for construction to determine the devolution of title to Wright County real estate.

Rahymond Buchan was survived by his widow, four sons and one daughter.

Decedent's widow, Margaret J. Buchan, died in 1916 survived by the same children as her husband.

A son, James, died in 1932 survived by issue. They make no claim here.

A son, Collin, died in 1939 survived by issue, a son. He is defendant herein.

A son, Raymond, died in 1948 survived by issue. They make no claim here.

A daughter, Mary, died May 20, 1960, unmarried and without issue.

A son, Jay G. Buchan, survives and is plaintiff herein.

All interested parties except Burton F. Buchan and Norma Buchan, his wife, son and daughter-in-law of Collin, have disclaimed in favor of plaintiff all interest in the land now involved.

The issue before us is between Jay G. Buchan, the surviving son of the original testator as plaintiff, and Burton F. Buchan, a son of a deceased son (a grandson) of the testator.

The will of Rahymond Buchan gave to his surviving widow one third of the net income from all his lands during her life. She elected to take under the will.

To each of his children he gave specifically described real estate. To his daughter Mary he gave the Wright County, Iowa, real estate involved herein.

The will is noticeable for its lack of spelling accuracy and lack of punctuation.

Following the devises to the children the will provides:

" 'Each of them shal keep and improve these Lands subject to my wifes Dower intrest during their lives at their deaths it shal go to their children from their own bodies in case of no child from their own then it shal go to the nearest heirs of my body.' ".

When Mary died in 1960 without issue her brother, plaintiff herein, and sole survivor of testator's children, claimed the Wright County real estate as his father's nearest heir of the body. Burton F. Buchan, one of testator's grandsons (a nephew of plaintiff), seeks one fourth of the real estate claiming to be an heir of equal rank.

The trial court held that Mary took only a life estate under the will of her father and that she possessed no inheritable estate at the time of her death. We agree but as there has been no appeal from this part of the Court's Findings, Order and Judgment, discussion is not necessary.

As to the nature of the estate in the land we quote with approval from the trial court's findings:

"Since Mary Buchan acquired only a life estate in the lands devised to her by her father, the question arising is as to the nature of the remainder interest in said lands which was created by the will of Rahymond Buchan.

"The remainder created is contingent and not vested. A vested remainder whereby the estate passes by the conveyance but possession and enjoyment are postponed until the particular estate is determined is where the estate is invariably fixed to remain in certain determined persons. A contingent remainder

is limited to take effect to a dubious or uncertain person or upon a dubious or uncertain event.

"In the case at bar the persons who will take the remainder in the lands devised to Mary for life are uncertain. It is uncertain as to which of the children of the testator who are life tenants of specific lands will die with or without issue, and if without issue it is then uncertain as to who are the nearest heirs of the body of the testator at that time. Only upon termination of the life estates could the persons who were entitled to the remainder be ascertained. The devise of the remainder takes effect upon the death of the life tenant and not before. See Pringle vs. Houghton, 249 Iowa 731.

"Mary being deceased, her life estate is ended. It then becomes necessary to ascertain who are the persons who take the remainder interest at her death as provided by the terms of the will of Rahymond Buchan, deceased."

The sole proposition relied on for reversal is that the court erred in holding that defendant was not one of testator's nearest heirs of the body. The court held that plaintiff was the sole nearest heir of testator's body and as such took the land.

I. The arguments are devoted to the meaning of the words used by the testator.

It has been held consistently that the purpose of construing a will is to ascertain the testator's intent and give it effect unless contrary to law. Extensive citation of authority is unnecessary. Wright v. Copeland, 241 Iowa 447, 452, 41 N.W.2d 102.

II. Much of the argument is devoted to discussion of the meaning of the word "heirs." "We have repeatedly held such terms as 'heirs' and 'legal heirs' have no fixed meaning. Technically 'heirs' are those upon whom the law casts the estate immediately on the death of the ancestor. [Citations] Yet this meaning is frequently not applied but the sense in which the term is used is determined from the will and the surrounding circumstances." (Citations) See page 453, Wright v. Copeland, supra. See also Slavens v. Bailey, 222 Iowa 1091, 1095, 270 N.W. 367.

Various constructions incident to the premise from which we must proceed are summarized in 95 C. J. S., Wills, section 673, on pages 995, 996, as follows:

. "The word 'heirs' is not restricted to blood relatives of the testator unless such an intention is manifest. * * * A devise to the testator's 'natural heirs' would mean his mother and [father], rather than cousins of any degree. * * * The terms 'lawful heirs,' 'right heirs,' 'heirs at law,' 'legal heirs,' and 'heirs' have been held to be synonymous. * * * In order to effectuate the intention of the testator as ascertained from the context of the will and the surrounding circumstances, the word 'heirs' has, in particular cases, been construed to mean heirs of the body, a limited class of heirs, lineal descendants, blood relatives, such collaterals as would inherit, issue, next of kin, or those who have been previously designated in the will as devisees or legatees."

In re Estate of Organ, 240 Iowa 797, 801, 38 N.W.2d 100, held that the word "heirs" was not used in that case in its strict technical sense but was equivalent to children or heirs of the body.

It would be an almost endless and certainly a hopeless task to try to reconcile the pronouncements from the many jurisdictions in our country. There is greater dissonance than harmony. It is clear, however, that in Iowa the word "heirs" is not necessarily construed in its strict technical sense. It does not necessarily mean all those upon whom the laws of intestacy might cast an inheritance.

The term "heirs of the body" ordinarily means such of the issue or offspring of a person as may by law inherit, to the remotest posterity. The words mean lineal descendants. Pringle v. Houghton, 249 Iowa 731, 744, 88 N.W.2d 789. They are words of limitation in that they refer to heirs by consanguinity and not by affinity. They limit the heirship to those related by blood.

In the case at bar when testator limited the devolution of title to his real estate to " 'heirs of my body' " he limited heirship to heirs of his own blood. To that extent plaintiff, a son, and defendant, Burton F. Buchan, a grandson, would qualify.

III. Even assuming that there are no degrees of heirship there are degrees of blood relationship.

In addition to limiting heirship to heirs by consanguinity decedent provided another qualification. He said " '*nearest* heirs of my body.' " (Emphasis supplied.)

To take under the will of the testator two things are necessary; i.e. to be an heir by blood relationship and also to be "nearest."

IV. Section 4.1(24), Code of Iowa, provides that degrees of consanguinity shall be computed according to the civil law. A son, direct issue of his parents, is related in the first degree. A grandson is, in regard to the grandfather, in the second degree in the direct line. Martindale v. Kendrick, 4 (G. Greene) Iowa 307.

Under statutes of descent relatives of a lower degree may have the same right of inheritance per stirpes as relatives of a higher degree but in the case before us the parties do not take as heirs under the statute, but as devisees under the will. They take by purchase and not by descent. Jones v. Parsons, 182 Iowa 1377, 1380, 166 N.W. 707.

In the Jones case, supra, the court faced the construction of the words "nearest blood connection." This case was cited and relied on by the trial court.

We agree with the trial court that the Jones case is decisive of a situation such as we have here. The case definitely holds that surviving children are "nearest blood connection" to the exclusion of all others.

Defendants attempt to distinguish and avoid the impact of the Jones case by pointing out the distinction between the meaning of the word "heirs" and "nearest blood connection." If, however, the words " 'heirs of my body' " limit inheritance to blood relatives then the word "nearest" means the one nearest in blood relationship, i.e. the surviving son to the exclusion of the grandson.

V. Defendants argue with skill that no possible reason is suggested for imputing to the testator an intent to establish a tontine among his children, so that the survivor among them should take to the exclusion of sons and daughters of his deceased children. It is not for us to speculate as to why testator disposed of his property as he did. We have no authority to change testator's will. Even if we thought testator should have made different provisions for the disposition of his property we

could not substitute our ideas for his. The manner in which his property was to be disposed of was vested in him and not in us.

The provisions of testator's will did not create a true tontine nor a "last man club." He provided for per stirpes taking by his grandchildren, each through his own parent. Only in the event of death of a son or daughter of testator with "no child from their own" body was the remainder to go according to what defendant has referred to as a tontine. No grandchild was prevented from going into possession of property upon termination of his parent's life estate. Conversely no rights come into existence upon the death without issue of an uncle or aunt if there was a surviving son or daughter of testator.

Such was the express intent of the testator.

The trial court was right.

The case is—Affirmed.

All JUSTICES concur.