Ellen Keeler SCHAEFER, Plaintiff-Appellee,

v.

MERCHANTS NATIONAL BANK OF CEDAR RAPIDS, Iowa, Trustee Under the Will of Ellen C. Keeler and Trustee of a certain Inter Vivos Trust Agreement dated July 26th, 1939, bearing Trust No. 425, Defendant-Appellee;

Eleanor Putnam Sewall, Defendant-Appellant;
and
Leila Love Keeler, Defendant.

No. 53009.

Supreme Court of Iowa.

July 18, 1968.

Lynch, Dallas, Smith & Harman, Cedar Rapids, for defendant-appellant, Eleanor Putnam Sewall.

Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendant-appellee, Merchants National Bank of Cedar Rapids.

Nazette & Bromwell, Cedar Rapids, for plaintiff-appellee.

STUART, Justice.

The ultimate question for our determination is whether Eleanor Putnam Sewall (who was adopted by Charles Butler Keeler, the beneficiary of inter vivos and testamentary trusts, thirteen years after the execution of the trust instruments and nine years after the death of the settlor-testatrix) was intended by said settlor-testatrix to be included in the gift to the class denominated in the trust instruments as "direct heirs" of the beneficiary. The trial court held such adopted person was not within the contemplation of the settlor-testatrix when she executed the trust instruments. We agree.

Ellen C. Keeler executed her last will and testament in 1935. On July 26, 1939 she executed the codicil to her will and the inter vivos trust agreement which are in question here. In 1939 she had two sons (1) George G. Keeler, father of John B. Keeler and Ellen Keeler Schaefer, plaintiff; and (2) Charles Butler Keeler, who had been married to Leila Love Keeler since 1920. No children were ever born of this marriage. Charles Butler Keeler was 57 years old in 1939 and his wife was a year or two older.

For convenience, Ellen C. Keeler will be referred to as the testatrix. The three instruments as a group will be referred to as the trust instruments. We will refer to the individual instruments as the will, codicil and trust agreement respectively.

Under the terms of the trust instruments the principal of each trust created thereby was divided into two equal parts, one for each son. The codicil, in part provided: "'* * * In the event of the death of either son, before or after my death, his share of the principal, hereinafter referred to as his trust share, and the net income thereon, shall be disposed of as follows: (1) In the event he has no surviving wife, or his surviving wife is not a person in being upon the date of this instrument, *his said trust share and undistributed net income thereon shall be transferred and paid over to his direct heirs,* if any, per stirpes, * * *'."

Paragraph 13(b) (1) of the trust agreement provided for the disposition of the principal of the trust as follows:

"* * * said principal shall, after the death of the grantor, be divided by the

Trustee into two equal shares (one of which shall be designated as the Charles Keeler share and the other as the George Keeler share) and so long as either son shall live he shall so receive, after the death of the grantor, the net income upon his share. After the death of the grantor and after the death of either of said sons, his share of the principal, hereinafter referred to as his trust share, and the net income thereon, shall be disposed of as follows: (1) In the event he has no surviving wife, or his surviving wife is not a person in being upon the date of this instrument, *his said trust share and undistributed net income thereon shall be transferred and paid over to his direct heirs,* if any, per stirpes, * * *."

Ellen C. Keeler died March 19, 1943. Her son George G. Keeler died in July, 1944. George's son John died in July, 1951. Ellen Keeler Schaefer, plaintiff is the only surviving "direct heir" of George. His portion of the trust is not in issue.

In May, 1943 Charles Butler Keeler was divorced from Leila Love Keeler. He moved to California and on June 11, 1952 at the age of 70, he adopted defendant, Eleanor Putnam Sewall, a widow. Her age is not given. Charles died January 19, 1964.

The dispute is between Eleanor Putnam Sewall who claims to be the "direct heir" of Charles Butler Keeler and Ellen Keeler Schaefer who would receive the trust estate if Charles had no "direct heirs" as used in the trust instruments.

Mrs. Sewall's position is "that the limitation in favor of the 'heirs' of Charles Butler Keeler designated the heirs of Charles Butler Keeler as determined by the statutes of intestate succession of the State of Iowa as they existed on the date of his death on January 19, 1964, and that by the use of the word 'direct' the testator and settlor intended to exclude collateral heirs". She agrees the question is not determined by the fact that adopted persons are entitled to inherit from the adop-

tive parents under the law of Iowa but whether testatrix, a stranger to the adoption, intended to include adopted persons in the class she designated as "direct heirs" of her sons.

We now turn to the rules of will construction which also apply to the trust agreement, 86 A.L.R.2d 19.

■ The cardinal rule of will construction is that the intention of the testator must be ascertained and given effect unless contrary to some rule of law or public policy. Clarken v. Brown, 258 Iowa 18, 23, 137 N.W.2d 376, 379; Buchan v. Buchan, 254 Iowa 566, 570, 118 N.W.2d 611, 614; In Re Austin's Estate, 236 Iowa 945, 949, 20 N.W.2d 445, 447; Slavens v. Bailey, 222 Iowa 1091, 1095, 270 N.W. 367, 369; In Re White's Estate, 209 Iowa 1210, 1212, 229 N.W. 705, 706.

■ The rules of construction are merely to aid in the determination of such intent. In Re Austin's Estate, supra.

■ The word "heirs" does not have a fixed meaning and the sense in which the word is used by testatrix must be determined from the instruments read as a whole and in the light of all the relevant facts and circumstances under which the instrument was executed. In Re Estate of Tedford, 258 Iowa 890, 893, 140 N.W.2d 908, 911; Buchan v. Buchan, supra; Slavens v. Bailey, supra; In Re Austin's Estate, supra; Hiller v. Herrick, 189 Iowa 668, 671, 179 N.W. 113; Warden v. Overman, 155 Iowa 1, 8, 135 N.W. 649.

■ Unless a contrary intent appears from the evidence "heirs" will be construed as those who would take under the statutes of descent; Katz Inv. Co. v. Lynch, 242 Iowa 640, 650, 47 N.W.2d 800, 806–807; Lincoln Joint Stock Land Bank of Lincoln, Neb. v. Mitchell, 239 Iowa 995, 1000, 33 N.W.2d 388, 391; Restatement, Property, §§ 305, 308; but the strict legal meaning is not controlling and if it fairly appears that the testatrix used

the term in some other sense, the technical meaning will not be permitted to defeat the manifest intention of the testatrix. Gilbert v. Wenzel, 247 Iowa 1279, 1282, 78 N.W.2d 793, 795; Wright v. Copeland, 241 Iowa 447, 453, 41 N.W.2d 102, 106; Warden v. Overman, supra; Hiller v. Herrick, 189 Iowa 668, 671, 179 N.W. 113; Slavens v. Bailey, supra.

I. Although this is an equity matter, the trial court, without objection, ruled on the admissibility of the testimony of the scrivener of the instruments in question, a highly regarded attorney with extensive probate practice and experience in drawing instruments of this kind. An offer of proof was made. As our review is de novo and as the evidence, if admissible, should be considered in deciding this case, we will first consider this proposition for reversal.

█ As indicated by the authorities cited above it is proper to consider the circumstances under which the instruments were executed. In Flynn v. Holman, 119 Iowa 731, 737, 94 N.W. 447, 449, we said: "The purpose for which extrinsic evidence may be legally admitted is not to add to or vary the meaning of a will nor to prove an unexpressed intention of the testator, but to enable the court, by the light of the circumstances surrounding the execution of the instrument, to determine just what was meant by the words actually employed by him."

Some of the questions called for the opinion and conclusion of the witness and objections thereto were properly sustained. For the purpose of this case, we will consider the following testimony to be properly in evidence.

Testatrix was the wife of an attorney and had assisted him in some of his work. She seemed more familiar with lawyers and legal terms than the ordinary client. Her husband had left everything to her and she felt morally bound to see her sons got the benefit of the property.

The witness was asked: " * * * did you ever have any conversation with Mrs. Keeler, * * * in which you explained to her the meaning of the word 'heirs'?" He answered: "It was my custom to always explain the meaning of the word 'heirs' to any client for whom I was drafting a trust agreement or a will and I am sure that at that time the significance of the word 'heirs' was explained to her * * *." He then stated what she "understood". This was an opinion and conclusion which we will not consider.

He also testified: "She was advised * * * that the word 'heirs' would include adopted children."

Appellant argues this evidence shows beyond a question of a doubt that the words "direct heirs" were used by testatrix with the "intention of adopting the statutes of intestate succession for the purposes of determining those persons who should succeed to the 'Charles Keeler share' of both trusts". We do not consider this evidence to be so conclusive.

It must be remembered the attorney is attempting to recall events and conversations which took place 25 years or more before. It was undoubtedly true, as pointed out by Mr. Nazette: "I think the record should also show, Your Honor, if he were allowed to testify, he would say: 'This is so long ago I cannot testify except from an argumentative standpoint'."

The evidence is only a part of the total circumstances under which we must attempt to determine the intention of the testatrix when she used the term "direct heirs". We consider this testimony of less importance in determining such intent than the meaning attributed to "direct heirs" by testatrix through her scrivener in other provisions of the trust agreement.

█ II. " * * * When a word or expression occurs more than once in a will, it will be presumed to have been used in the same sense each time unless the context shows a contrary intention." In Re

Trusts of Young, 243 Iowa 211, 220, 49 N.W.2d 769, 774; Slavens v. Bailey, 222 Iowa 1091, 1095, 270 N.W. 367, 369; Ellsworth College v. Carleton, 178 Iowa 845, 851, 160 N.W. 222; Roskrow v. Jewell, 154 Iowa 634, 637, 135 N.W. 3.

Paragraph 13(a) of the trust agreement divided the income of the trust *during the life* of the grantor ¼th to Charles and ¾ths to George and then provided:

"In the event of the death of either of said sons during the lifetime of the grantor, then the undivided share of the net income which would have otherwise been payable to said deceased son, * * * shall be *paid over to and distributed equally among his surviving wife and children,* and the survivor or survivors of them, during the grantor's life. If there is *no surviving wife or children* of such deceased son, or after the death of all such parties during the grantor's life, then his income share shall be *paid over and distributed to the grandchildren* of said son, if any, per stirpes. *If at the death of said son, no spouse or direct heirs survive him,* or if all such who survive him, die during the life of the grantor, * * * [his share shall be paid as if it were part of the income share of the other son] * * *."

■ It is apparent that testatrix here was using "wife" and "spouse" interchangeably and "children" and "grandchildren" as equivalent to "direct heirs". Appellant does not claim otherwise but argues the provision applies only to distribution of the income under the trust agreement and has nothing to do with distribution of the principal of the trusts and that there is no such provision in the will or codicil.

Under the cited authorities, the presumption that the phrase "direct heirs" is used in the same sense throughout the instrument would arise even though the particular provision dealt with income rather than principal. It is true a similar provision does not appear in the will or codicil. As the provision in which direct heirs were so identified related to the distribution of income during the *lifetime* of the grantor, there was no place for it in her will or codicil.

However, the phrase and its use are tied in to the will and codicil. The codicil and trust agreement were executed the same day. Paragraphs 13(1) of the trust agreement and 13(1) of the codicil are identical and provide: "In the event he has no surviving wife, or his surviving wife is not a person in being upon the date of this instrument, his said trust share and undistributed net income thereon shall be transferred and paid over to his *direct heirs,* if any, per stirpes, and if he has none * * * [to other son or son's heirs if he is deceased] * * *."

This paragraph deals with the income and uses the term "direct heirs". Under the authorities referred to, it is presumed "direct heirs" in this trust agreement means children and grandchildren. The paragraph in the codicil is identical. The two instruments are part of the same estate plan. If "direct heirs" means children or grandchildren in the trust agreement, testatrix must have intended the phrase to have the same meaning in the identical provision in the codicil. There is no indication the income from the testamentary trust was to be distributed differently from the income of the inter vivos trust.

Paragraph 15 of the will and paragraph 15 of the trust agreement were drafted 4 years apart and authorized the trustee to invade the corpus of the trusts under certain circumstances for the benefit of testatrix's "sons, while living or their wives or children" after the death of such son. The similarity in the provisions of the two trusts show they are intended to be part of one estate plan.

We believe these facts constitute strong evidence that testatrix in all three instruments used the term "direct heirs" to mean children and grandchildren and it has

therefore been shown testatrix did not intend "heirs" to mean those who would take under the Iowa law of intestate succession.

■ III. When the phrase "direct heir" is used in the sense of children or grandchildren, it is not construed to include an adopted child. Cook v. Underwood, 209 Iowa 641, 645, 228 N.W. 629, 631. Where an instrument has been executed before an adoption by a stranger to the adoption, "children" does not include an adopted child except when the contrary appears from other language or circumstances. Mesecher v. Leir, 241 Iowa 818, 823, 43 N.W.2d 149, 152; Baker v. Giffrow, 257 Iowa 929, 932, 135 N.W.2d 629, 631; Restatement, Property, § 287, p. 1520. Where a will has been executed before the effective date of an adoption; an adopted child, not then being in legal existence, could not have been in the contemplation of the maker of the will. Mesecher v. Leir, supra.

■ While there is much merit in the argument that an adopted child should be placed on the same level as natural born offspring, in accordance with public policy favoring adoption, it is not pertinent here as the same public policy does not extend to an adult adoption which appears to be primarily for the purpose of creating an heir. The need for a young child to feel it has been fully accepted into the family relationship does not exist in an adult adoption. See: Halbach, Rights of Adopted Children, 50 Iowa L.Rev. 971.

IV. Appellant argues testatrix must have intended "direct heirs" to include adopted children as she must have known there was no possibility of Charles and his wife having natural children because of their age. This argument would have

much force if Charles was the only beneficiary of the trust instruments. However, George Keeler, who had two living children, was also a beneficiary. The instruments were skillfully drafted to cover the differing situations of the two beneficiaries in the same provisions.

■ It is highly unlikely that testatrix considered the possibility that Charles would either have or adopt any children. She probably formed no actual intention with regard to the factual situation before us. We therefore attempt to arrive at her intention under the law from the wording of the instruments and the circumstances. It is doubtful that testatrix expected the provisions relating to "direct heirs" to have any application to Charles' share. These provisions were necessary to cover George's situation. We conclude testatrix's concern for Charles' share of the trust extended only to Charles and his then wife and that she intended the remaining portions of his share to become the property of George, his children or his grandchildren.

■ V. The trial court taxed the costs against defendant, Eleanor Putnam Sewall. Plaintiff brought the action for a declaratory judgment pursuant to section 633.11 Code of Iowa. We believe the costs in the trial court were properly part of the costs of administering the estate and should be paid by the estate. However, Mrs. Sewall is the only appellant and as she has failed in her effort to obtain a reversal of the judgment of the trial court, the costs on appeal are taxed to her. Bankers Trust Co. v. Allen, 257 Iowa 938, 955, 135 N.W.2d 607, 617.

Except as modified by the retaxing of the costs, the trial court is affirmed.

Modified and affirmed.

All Justices concur.